**The PENN CENTRAL CORPORATION,
Plaintiff–Appellant,**

v.

**WESTERN CONFERENCE OF TEAM-
STERS PENSION TRUST FUND,
Defendant–Appellee.**

No. 94–16754.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 8, 1996.*

Decided Jan. 30, 1996.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Christopher S. Thrutchley, Conners & Winters, Tulsa, Oklahoma, for plaintiff-appellant.

Robert M. Westberg, Kirke M. Hasson, Jennifer Wysong, Pillsbury, Madison & Sutro, San Francisco, California, for defendant-appellee.

Before: LAY,** GOODWIN, and PREGERSON, Circuit Judges.

## OPINION

PREGERSON, Circuit Judge:

The Penn Central Corporation ("Penn Central") appeals the district court's summary judgment upholding an arbitration award in favor of the Western Conference of Teamsters Pension Trust Fund (the "Fund") for "withdrawal liability" under section 4201 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1381. This appeal presents two issues. First, we must decide whether Penn Central is exempt from withdrawal liability under 29 U.S.C. § 1398. Second, we must decide whether an award of attorneys' fees to the Fund was appropriate. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court had jurisdiction pursuant to 29 U.S.C. § 1451. We affirm.

### I

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453, amended ERISA to provide that "[i]f an employer withdraws from a multiemployer plan in a complete or partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381. *See also Concrete Pipe & Products v. Construction Laborers Pension Trust,* 508 U.S. 602, —— – ——, 113 S.Ct. 2264, 2271–2274, 124 L.Ed.2d 539 (1993). Before passage of MPPAA, employers that withdrew from pension plans were not required to pay their share of the plan's " 'unfunded vested benefits liability'—the shortfall between the assets of the pension fund (the hourly contributions paid by employers, plus earnings thereon) and the actuarial value of vested pension rights of the employees." *Woodward Sand Co. v. Western Conference of Teamsters,* 789 F.2d 691, 694 (9th Cir. 1986).

■ Congress' purpose in enacting MPPAA was to ensure that employers withdrawing from multiemployer pension plans would not escape liability for employees' unfunded vested benefits. *Concrete Pipe,* 508 U.S. at ——, 113 S.Ct. at 2272. As the Supreme Court explained:

> A key problem of ongoing multiemployer plans, especially in declining industries, is the problem of employer withdrawal. Employer withdrawals reduce a plan's contribution base. This pushes the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities, including liabilities generated by employers no longer participating in the plan, so-called inherited liabilities. The rising costs may encourage—or force—further withdrawals, thereby increasing the inherited liabilities to be funded by an ever-decreasing contribution base. This vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue.

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 722, 104 S.Ct. 2709, 2714, 81 L.Ed.2d 601 (1984).

■ Under MPPAA, an assessment of withdrawal liability "ensure[s] that employees and their beneficiaries [are not] deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Benefit Guaranty Corp.,* 467 U.S. at 720, 104 S.Ct. at 2713. If a withdrawal occurs, the employer is required to pay its share of the plan's unfunded liabilities which are attributable to that employer's participation. *See* 29 U.S.C. § 1381–1391.

Withdrawal liability is triggered where an employer withdraws completely or partially from a pension plan. *See* 29 U.S.C. §§ 1383, 1385.[1] A complete withdrawal occurs when an employer: "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). For purposes of determining whether a withdrawal has occurred, all

---

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. The parties do not contend that a partial withdrawal occurred here.

trades and businesses under "common control" are treated as a single employer. 29 U.S.C. § 1301(b)(1).

Under 29 U.S.C. § 1398, an employer will be exempt from an assessment of complete withdrawal liability if the employer withdraws from the multiemployer pension plan as a result of one of the transactions listed in the statute. Section 1398 provides:

> Notwithstanding any other provision of this part, an employer shall not be considered to have withdrawn from a plan *solely because*—
>
> (1) *an employer ceases to exist by reason of*—
>
>> (A) *a change in corporate structure* described in section 4069(b), or
>>
>> (B) a change to an unincorporated form of business enterprise, if the change causes no interruption in employer contributions or obligations to contribute under the plan, or
>
> (2) an employer suspends contributions under the plan during a labor dispute involving its employees.
>
> For purposes of this part, a successor or parent corporation or the entity resulting from any such change shall be considered the original employer.

29 U.S.C. § 1398 (emphasis added).

When an employer withdraws from a plan, the plan sponsor (here the Fund) assesses the withdrawal liability by sending a notification to the employer and a demand for payment. 29 U.S.C. § 1399(b). Any dispute over the employer's withdrawal liability must be resolved by arbitration. 29 U.S.C. § 1401(a)(1). Any party may challenge the arbitrator's award by filing an action in the district court to enforce, vacate, or modify the award. 29 U.S.C. § 1401(b)(2).

## II

The parties stipulated to the facts in this case. The Fund administers a multiemployer pension plan regulated under ERISA. G.K. Trucking ("G.K."), Marathon Steel Company ("Marathon"), and Buckeye Gas Products Company ("Buckeye Gas") were three former subsidiary corporations under Penn Central's "common control" within the meaning of 29 U.S.C. § 1301(b)(1).[2] From at least 1981 through December 1986, the three subsidiaries participated in the pension plan pursuant to various collective bargaining agreements.

In 1989, the Fund assessed Penn Central withdrawal liability in the amount of $60,618. The assessment was triggered by Penn Central's sale of one of its subsidiaries, Buckeye Gas, to the Ferrell Companies, Inc. and Ferrellgas, Inc. (the "Ferrell Group"). The Fund assessed Penn Central withdrawal liability for Penn Central's two former subsidiaries, G.K. and Marathon, which had ceased operations in February 1982 and March 1986, respectively.[3] The Fund did not assess any withdrawal liability for Buckeye Gas, because, apparently, Buckeye Gas, through the Ferrell Group, continued to make contributions to the multiemployer pension plan.

Penn Central paid the assessed withdrawal liability, but challenged the assessment through arbitration, pursuant to 29 U.S.C. § 1401(1). Penn Central maintained that it was exempt from withdrawal liability for G.K. and Marathon under 29 U.S.C. § 1398(1)(A), because, according to Penn Central, it ceased to exist as a covered employer "solely" by reason of a change in corporate structure. The arbitrator rejected this argument. The arbitrator concluded that Penn Central's sale of Buckeye Gas to the Ferrell Group was an event triggering assessment of withdrawal liability for G.K. and Marathon and that Penn Central had not

---

**2.** Section 1301 provides, in relevant part, that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

**3.** Apparently, the cessation of operations by G.K. and Marathon was shielded from "withdrawal liability" because they were under "common control" when they ceased operations and because Penn Central, through Buckeye Gas, continued to make contributions to the Fund. *See* 29 U.S.C. § 1383(a).

ceased to exist "solely" because of corporate restructuring.

Penn Central brought this action under 29 U.S.C. § 1401(b)(2) to vacate the arbitration award. The parties filed cross-motions for summary judgment. The district court confirmed the arbitrator's award. The district court concluded that Penn Central ceased operations within the meaning of 29 U.S.C. § 1381 and that the Fund properly assessed withdrawal liability for G.K. and Marathon when Penn Central sold Buckeye Gas. The district court also held that the Fund was entitled to attorneys' fees. The district court, however, did not determine the specific amount of fees to be awarded.

On appeal, Penn Central contends that the arbitrator and the district court erred in not applying 29 U.S.C. § 1398 to this case. Penn Central argues that it is exempt from withdrawal liability because it ceased to exist "solely" because of a corporate restructuring. Penn Central also argues that, based on its construction of the statute, the Ferrell Group assumed Penn Central's withdrawal liability for G.K. and Marathon when the Ferrell Group purchased Buckeye Gas. Finally, Penn Central claims that an award of attorneys' fees was improper.

### III

#### A. "Withdrawal Liability"

■ We review de novo the district court's grant of summary judgment. *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). Under MPPAA, "the arbitrator's factual findings are presumed correct, and the presumption is 'rebuttable only by a clear preponderance of the evidence.' 29 U.S.C. § 1401(c)." *CMSH Co., Inc. v. Carpenters Trust Fund*, 963 F.2d 238, 240 (9th Cir.), *cert. denied* 506 U.S. 864, 113 S.Ct. 185, 121 L.Ed.2d 130 (1992). "The arbitrator's conclusions of law are reviewed

de novo." *Id.* Whether a withdrawal within the meaning of the statute has occurred presents a mixed question of law and fact. *Concrete Pipe*, 508 U.S. at ——, 113 S.Ct. at 2283.

In this case, the Fund determined that Penn Central had completely withdrawn from a multiemployer pension plan when it sold Buckeye Gas to the Ferrell Group. Accordingly, the Fund assessed Penn Central withdrawal liability for G.K. and Marathon.[4] The Fund did not assess withdrawal liability against Buckeye Gas, apparently, because Buckeye Gas, through its new parent, the Ferrell Group, continued to make contributions to the pension plan. We, therefore, must decide whether the Fund's assessment of complete withdrawal liability for G.K. and Marathon—which was triggered by Penn Central's sale of Buckeye Gas to the Ferrell Group—was proper under ERISA.[5]

There is no question that Penn Central completely withdrew from the plan within the meaning of 29 U.S.C. § 1381 when it sold Buckeye Gas to the Ferrell Group. Because G.K. and Marathon already had ceased operations, with the sale of Buckeye Gas, Penn Central ceased to exist as a covered employer and was subject to an assessment of withdrawal liability for its former subsidiaries. Thus, Penn Central's withdrawal liability for G.K. and Marathon, which had been shielded from assessment by Buckeye Gas' continued contributions to the plan, became due.

The real question in this case is whether Penn Central is exempt under 29 U.S.C. § 1398 from paying the withdrawal liability for G.K. and Marathon. Penn Central argues that it is exempt from "withdrawal liability" because it sold Buckeye Gas through a stock sale, which is an exempt transaction under 29 U.S.C. § 1398. Penn Central's argument, however, has no merit.

---

4. According to the Fund, no withdrawal liability was assessed against Penn Central when G.K. and Marathon ceased operations because Buckeye Gas continued to be under the "common control" of Penn Central and to make contributions to the plan.

5. We express no opinion as to whether the Fund's determination not to assess Penn Central withdrawal liability when G.K. and Marathon ceased operations was correct. The parties do not contend that partial withdrawal liability should have been assessed when G.K. and Marathon ceased operations. Nor does our resolution of this case depend on this issue.

■ Under a plain reading of § 1398, Penn Central is exempt from withdrawal liability if it withdrew from the pension plan "*solely* because ... of ... a change in corporate structure." 29 U.S.C. § 1398 (emphasis added). In the case of an employer (such as Penn Central) that controls various businesses within the meaning of 29 U.S.C. § 1301(b)(1), we interpret the "solely" language in 29 U.S.C. § 1398 as requiring that all of the businesses under the employer's "common control" must withdraw from the pension plan through an exempt transaction for the employer to be exempt from withdrawal liability for each business under its common control. In short, for Penn Central to be exempt from withdrawal liability for G.K. and Marathon, Penn Central must show that both G.K. and Marathon ceased operations through an exempt transaction under the statute.

G.K. and Marathon did not cease operations because of a corporate restructuring. Only Buckeye Gas ceased operations because of a corporate restructuring. In these circumstances, it cannot be said that Penn Central withdrew from the pension plan "solely" because of a corporate restructuring. Penn Central, therefore, incurred withdrawal liability when it sold Buckeye Gas to the Ferrell Group.

Penn Central, however, responds that the Ferrell Group assumed Penn Central's withdrawal liability for G.K. and Marathon when it purchased Buckeye Gas. In support of its position, Penn Central points to the last sentence in the statute, which provides that "a successor or parent corporation or other entity resulting from any such change shall be considered the original employer." 29 U.S.C. § 1398. Penn Central construes this language to argue, in effect, that the Ferrell Group became the original employer of G.K. and Marathon when it purchased Buckeye Gas.

■ Penn Central's construction of the statute is wrong. We interpret the last sentence in the statute to mean simply that a successor corporation (such as the Ferrell Group) that purchases *one* of the companies under a parent's common control becomes the original employer of *that* company and

may be exempt from an assessment of withdrawal liability *only* for *that* company. It would be unreasonable to interpret the last sentence in 29 U.S.C. § 1398 as requiring the successor corporation to assume additional withdrawal liability for each of the parent's subsidiaries, where, as here, only one of the subsidiaries is purchased by the successor and the other subsidiaries ceased operations long before the successor's purchase.

■ Further, our construction of 29 U.S.C. § 1398 is supported by an opinion letter issued by the Pension Benefit Guaranty Corporation ("PBGC"), the federal agency responsible for interpreting ERISA. We are obligated to defer to the PBGC's interpretation "[e]ven if reasonable minds could differ as to the proper interpretation of the statute." *Elliott v. Carpenters' Pension Trust Fund*, 859 F.2d 808, 813 (9th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 406 (1989). "[T]he determination of the PBGC ... is entitled to great deference in the construction and application of ERISA." *Connolly v. Pension Benefit Guaranty Corp.*, 581 F.2d 729, 730 (9th Cir. 1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979).

In opinion letter 92–1, the PBGC interprets section 1398 and instructs how certain transactions should be analyzed with respect to an assessment of "withdrawal liability." PBGC, Op.Ltr. 92–1 (March 30, 1992). The PBGC describes a hypothetical situation closely analogous to this case. The PBGC explains that to determine whether a decline in contributions is "solely" because of a corporate restructuring, "[r]elevant considerations might include the length of time between transactions, whether the transactions were related, and whether each transaction would have been subject to Section 4218 if viewed individually."

In the hypothetical, the parent corporation owns four subsidiaries, all of which cease covered operations or cease to be controlled by the parent. Of particular relevance here is PBGC's analysis of the parent corporation's stock sale of its subsidiary which results in the parent's complete withdrawal from the pension plan. The PBGC explains:

Under Section 4218 of ERISA, the P[arent's] controlled group would not ordinarily be subject to withdrawal liability on the sale of D's stock.... [H]owever, in order to avoid withdrawal liability, the controlled group must cease to have operations or such obligations "solely" because of a covered change in structure.... Assuming that the controlled group's cessation is not solely because of a covered restructuring, it incurs a complete withdrawal.

■ Applying the factors identified by the PBGC to this case leaves no doubt that Penn Central incurred withdrawal liability for G.K. and Marathon when it sold Buckeye Gas to the Ferrell Group. Although Buckeye Gas was sold through a stock transaction, Penn Central's other subsidiaries simply ceased operations. There is no evidence in the record to suggest that the cessation of operations by G.K. and Marathon was in any way related to the sale of Buckeye Gas to the Ferrell Group. Further, G.K. and Marathon would have been assessed withdrawal liability when they each ceased operations but for the fact that Penn Central continued to make contributions to the pension plan for Buckeye Gas. In these circumstances, it was proper for the Fund to assess Penn Central withdrawal liability for G.K. and Marathon when Penn Central sold Buckeye Gas to the Ferrell Group.

## B. Attorneys' Fees

■ Generally, an award of attorneys' fees is reviewed for an abuse of discretion. *Haworth v. Nevada,* 56 F.3d 1048, 1051 (9th Cir.1995). However, because the district court did not set a specific amount for its award of attorneys' fees in this case, there is no basis for review. *See Jensen Elec. Co. v. Moore, Caldwell, Rowland & Dodd, Inc.,* 873

F.2d 1327, 1329 (9th Cir.1989) ("[a]n order 'finding appellant liable for attorney's fees and costs but without determining the specific amount of that award is not a final and appealable order' "); *Gates v. Central States Teamsters Pension Fund,* 788 F.2d 1341, 1343 (8th Cir.1986) ("an order awarding attorney's fees is not an order which 'leaves nothing for the court to do but execute upon the judgment' ").

■ Nevertheless, to guide the district court in resolving the attorneys' fee issue, we note that the Fund is not entitled to a mandatory award of fees under 29 U.S.C. § 1132(g)(2), because Penn Central was never delinquent in paying the assessment of withdrawal liability.[6] The district court, however, in its discretion, may award the Fund attorneys' fees under 29 U.S.C. § 1132(g)(1).[7] In so doing, the district court is required, under Fed.R.Civ.P. 54(d)(2), to make findings of fact and conclusions of law.

## IV

For the reasons set forth above, the district court's grant of summary judgment upholding the arbitration award is affirmed.

**6.** Section 1132(g)(2) provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court *shall* award the plan ... reasonable attorney's fees and costs of the action, to be paid by the defendant." Section 1145 is entitled "Delinquent contributions" and provides, in relevant part, that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collec-

tively bargained agreement shall, to the extent not inconsistent with law, make such contributions." 29 U.S.C. § 1145.

**7.** Section 1132(g)(1) provides that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." (emphasis added).