**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: HOKULANI SQUARE, INC., a Hawaii corporation, *Debtor*, | No. 11-60072 BAP No. 10-1468 |
| BRADLEY R TAMM, Chapter 7 Trustee, *Appellant*, v. UST - UNITED STATES TRUSTEE, HONOLULU, *Appellee*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Dunn, and Jury, Bankruptcy Judges, Presiding

Argued and Submitted
October 10, 2013—Honolulu, Hawaii

Filed January 26, 2015

Before: Alex Kozinski, Raymond C. Fisher,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Kozinski

**SUMMARY**[*]

**Bankruptcy**

The panel affirmed the Bankruptcy Appellate Panel's reversal of the bankruptcy court's award of compensation to a chapter 7 trustee.

The trustee's compensation is calculated based on the value of the bankruptcy estate assets he disburses. In this case, secured creditors made a winning credit bid on real property of the bankruptcy estate, using money the estate owed them, rather than cash. The panel held that 11 U.S.C. § 326(a) does not permit a trustee to collect fees on a credit bid transaction in which the trustee disburses only property, not "moneys," to the creditor.

**COUNSEL**

Bradley R. Tamm (argued); Lissa D. Shults and Melissa A. Miyashiro, Shults & Tamm, ALC, Honolulu, Hawaii, for Appellant.

Noah M. Schottenstein (argued), Trial Attorney, Ramona Elliot, Deputy Director/General Counsel, P. Matthew Sutko, Associate General Counsel, Executive Office for the United States Trustees, Washington, D.C.; Tiffany Carroll, Acting United States Trustee for Region 15, Curtis B. Ching, Assistant United States Trustee, United States Department of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Justice, Office of the United States Trustee, Honolulu, Hawaii, for Appellee.

Daniel M. Benjamin, Ballard Spahr LLP, San Diego, California, for Amicus Curiae Carl A. Eklund.

## OPINION

KOZINSKI, Circuit Judge:

In bankruptcy, it's the trustee's job to manage the estate. Often, this means liquidating all the estate's assets and distributing the proceeds to creditors, shareholders and other interested parties. Some of the proceeds are awarded to the trustee as compensation, which is calculated based on the value of the assets he disburses. We address whether the trustee's compensation may reflect the value of what is known as a "credit bid."

## FACTS

Hokulani Square, Inc., filed for bankruptcy in May 2007. Bradley Tamm was appointed as the chapter 7 trustee. One of Hokulani's principal assets was a set of condominiums that exposed the estate to serious liabilities. Recognizing the risks of owning the condominiums, Tamm moved to auction them off. Two groups of secured creditors, both of which had liens on the condominiums, jointly submitted the winning bid at $1.5 million.

To pay, the secured creditors exercised their right to credit bid under 11 U.S.C. § 363(k). This means that they used the money the estate owed them, rather than cash, in making their

bid. In such a transaction, the creditors get the property, and the estate's debt is reduced by the amount of the bid.

Tamm petitioned the bankruptcy court for compensation in the amount of $109,293. He came up with this number by including the $1.5 million credit bid in his calculations. The United States Trustee objected on the ground that including the value of the credit bid was not authorized by 11 U.S.C. § 326(a). Excluding the credit bid would reduce Tamm's fee by approximately $40,000.

The bankruptcy court awarded Tamm the full $109,293, but the Ninth Circuit Bankruptcy Appellate Panel (BAP) reversed. Tamm appeals. We have jurisdiction under 28 U.S.C. § 158(d) and review the BAP's interpretation of section 326(a) de novo. *See In re Sasson*, 424 F.3d 864, 867 (9th Cir. 2005).

## DISCUSSION

**1.** The bankruptcy court has discretion to award a trustee fees up to a cap that is calculated as a percentage of "*all moneys disbursed or turned over* in the case by the trustee to parties in interest." 11 U.S.C. § 326(a) (emphasis added). Because "moneys disbursed or turned over" isn't defined in the Code, it retains its ordinary meaning. *See Ransom* v. *FIA Card Servs., N.A.*, 131 S. Ct. 716, 724 (2011). There are numerous ways to define "moneys,"[1] but dictionaries mostly

---

[1] The statute uses the plural "moneys" and not "money," the more common collective-noun form. The plural "is frequently used, especially in financial and legal contexts, to denote 'discrete sums of money' or 'funds.'" Bryan A. Garner, *Garner's Modern American Usage* 529 (2d

agree that the term refers to a generally accepted medium of exchange. *See, e.g.*, *Third New Int'l Dictionary* 1458 (2002) ("something generally accepted as a medium of exchange, measure of value, or a means of payment"); *Black's Law Dictionary* 1158 (10th ed. 2014) ("The medium of exchange authorized or adopted by a government as part of its currency; esp. domestic currency"); *Oxford English Dictionary* 992 (2d ed. 1989) ("[c]urrent coin . . . in pieces of portable form as a medium of exchange and measure of value"). It's also clear that "disburse" means to "pay out," *Black's Law Dictionary* 561 (10th ed. 2014), and "turn over" means to "deliver" or "surrender," *Webster's New Collegiate Dictionary* 1262 (8th ed. 1977). Taken together, this language seems to say that the trustee may collect fees only on those transactions for which he pays interested parties (in this case, secured creditors) in some form of generally accepted medium of exchange.

In a credit bid transaction, the trustee turns property over to the creditor, and the creditor reduces the amount the estate owes him by the value of his bid. The only thing "disbursed or turned over" by the trustee is the underlying property, in this case, a set of condominiums. However broadly we define "moneys," the term can't be expansive enough to encompass real estate, which is about as far from a "medium of exchange" as one can get. *See, e.g.*, Ping Cheng, et al., *Illiquidity and Portfolio Risk of Thinly Traded Assets*, 36 J. Portfolio Mgmt. 126, 126 (2010) (categorizing real estate as a highly illiquid asset). Congress elected to restrict the trustee's maximum compensation using the narrow term "moneys," as opposed to a broader term such as "property" or "assets," and we must "assume that the legislative purpose

---

ed. 2003). We can discern no significance to use of the plural here, and the parties have suggested none.

is expressed by the ordinary meaning of the words used." *INS* v. *Phinpathya*, 464 U.S. 183, 189 (1984) (internal quotation marks omitted).

The statute's legislative history confirms this view. A report of the House Judiciary Committee says that section 326(a) covers "the situation where the trustee liquidates property subject to a lien and distributes the proceeds." H.R. Rep. No. 95-595, at 327 (1977). The report is careful to note that section 326(a) "does not cover cases in which the trustee simply turns over the property to the secured creditor, nor where the trustee abandons the property and the secured creditor is permitted to foreclose." *Id.* This passage suggests that Congress considered the possibility of paying trustees for turning over property to creditors, and worded section 326(a) so as to preclude it.

Looking at the same legislative history, two of our sister circuits have also concluded that section 326(a) permits no pay for property disbursements in satisfaction for creditors' claims. The Fifth Circuit decided that section 326(a) doesn't allow a trustee to collect on the value of property given to creditors in exchange for a reduction in the amount they're owed. *In re England*, 153 F.3d 232, 235 (5th Cir. 1998). It reasoned that "[t]he plain language of § 326(a) indicates that the statute caps a trustee's compensation based upon only the moneys disbursed, without any allowance for the property disbursed." *Id.* And the Third Circuit held that "Congress did not intend to include credit bids in the trustee's compensation" because in a credit bid transaction "the secured creditor receives [] *property* in satisfaction of its secured claim." *In re Lan Assocs. XI, L.P.*, 192 F.3d 109, 117–18 (3d Cir. 1999).

**2.** Tamm and amicus ask us to interpret section 326(a) to align with bankruptcy practice prior to the 1978 Bankruptcy Act. While it's true that we typically "will not read the Bankruptcy Code to erode past bankruptcy practice," *Pa. Dept. of Pub. Welfare* v. *Davenport*, 495 U.S. 552, 563 (1990), even the most well-established pre-Code practice can't overcome language of the Code that "leaves no room for clarification," *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N.A.*, 530 U.S. 1, 11 (2000). And, as noted, section 326(a) leaves little to the imagination. Given Congress's clear statement that trustees may be compensated for nothing but "moneys disbursed," historical practice is beside the point.

Even if we did seek guidance from past practices, it would make no difference. Tamm and amicus cite a few pre-Code lower court cases that allowed fees on transactions where the trustee returned property to a lienholder in satisfaction of a secured claim. Interpreting section 326(a)'s predecessor, these cases reasoned that the trustee constructively disbursed moneys to creditors, even if he never paid the creditors in cash. *See, e.g.*, *In re Columbia Cotton Oil & Provision Corp.*, 210 F. 824, 827–28 (4th Cir. 1913). But a mere handful of lower court decisions, without more, does not demonstrate a "widely accepted and established" practice. *See Hartford Underwriters*, 530 U.S. at 9–10 (internal quotation marks omitted) (concluding that "a number of lower court cases" were insufficient to show a clearly established pre-Code practice); *cf. In re Bonner Mall P'ship*, 2 F.3d 899, 912 (9th Cir. 1993) (deferring to a pre-Code practice that "several Supreme Court cases had mentioned" and where there was direct evidence Congress had knowledge of the practice).

Furthermore, Tamm and amicus overlook pre-Code cases concluding that section 326(a)'s predecessor was "plain and unambiguous" in providing that "it is the moneys disbursed or turned over, and not property, that forms the basis for" the trustee's fee. *In re Morris Bros.*, 8 F.2d 629, 630 (D. Or. 1925); *see also, e.g.*, *In re Brigantine Beach Hotel Corp.*, 197 F.2d 296, 299 (3d Cir. 1952) ("It is clear that the word 'moneys' in the clause '. . . upon all moneys disbursed or turned over . . .' is not the equivalent of property."). Considering the sparse and conflicting evidence of any historical practice of compensating trustees for credit bids, we doubt that this was "the type of rule that . . . Congress was aware of when enacting the Code." *Hartford Underwriters*, 530 U.S. at 10 (internal quotation marks omitted).

Tamm also contends that our decisions—specifically *York Int'l Bldg., Inc.* v. *Chaney*, 527 F.2d 1061 (9th Cir. 1975), and *Sw. Media, Inc.* v. *Rau*, 708 F.2d 419 (9th Cir. 1983)—permit trustee compensation where no money changes hands but the trustee nonetheless "has properly performed services in relation" to "the particular property." *Id.* at 423 n.4 (quoting *In re Schautz*, 390 F.2d 797, 800 (2d Cir. 1968)). But our cases adopt no such theory. In *York*, which was decided before the Code, we said in a footnote without explanation that, "[f]or the purpose of calculating the trustee's fee under this section, we treat the assumption of the existing mortgages as a disbursement." *York*, 527 F.2d at 1074 n.12. Not only does *York* fail to address credit bids, but it also doesn't discuss the meaning of "moneys disbursed." Instead, *York* applies a different statute, one that doesn't tie a trustee's compensation to the amount of "moneys disbursed." *Southwestern Media* is equally inapplicable; it concerns not trustees' fees but whether a trustee violated his fiduciary duties. While that opinion contains some advisory language

about trustee compensation, we made clear that we were "not decid[ing] how the trustee's fee base would [be] defined," rendering any language about section 326(a) rank dicta. *Sw. Media*, 708 F.2d at 424.

Finally, Tamm argues that our reading of section 326(a) produces absurd results. *See Green* v. *Bock Laundry Mach. Co.*, 490 U.S. 504, 527 (1989) (Scalia, J., concurring). According to Tamm, taking the text literally means that the difference for a trustee between being paid for his services and working for free may turn on trivialities. When a third party wins an auction, the money collected counts in calculating the trustee's fee, but if a secured creditor tops the third party's bid by a mere dollar, the trustee gets nothing, even though he does the same work and achieves the same result for the estate.

The distinction drawn by section 326(a) may be harsh and misguided, but it is not absurd. The absurdity canon isn't a license for us to disregard statutory text where it conflicts with our policy preferences; instead, it is confined to situations "where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *Public Citizen* v. *U.S. Dep't of Justice*, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring); *see also* Antonin Scalia & Bryan Garner, *Reading Law* 234 (2012). If the text of section 326(a) is not wise, it is at least rational. Excluding credit bids may have been meant to motivate trustees to seek out third party buyers and thus get better results for the estate. The legislators may have estimated that this benefit of excluding credit bids from trustees' fees outweighed any of the problems described above. Congress made a policy judgment in selecting the

words of section 326(a), and we are in no position to contradict it.

*          *          *

In drafting section 326(a), Congress may not have chosen the most sensible path.  But between the statute's clear language and on-the-button legislative history, it appears that Congress's choice was deliberate.  We hold that section 326(a) does not permit a trustee to collect fees on a credit bid transaction in which the trustee disburses only property, not "moneys," to the creditor.  Other courts of appeals have reached the same conclusion and we find no basis for creating a circuit conflict.

**AFFIRMED.**