**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NEVADA RESORT
ASSOCIATION-
INTERNATIONAL ALLIANCE OF
THEATRICAL STAGE
EMPLOYEES AND MOVING
PICTURE MACHINE
OPERATORS OF THE US AND
CANADA LOCAL 720 PENSION
TRUST,

  *Plaintiff – Appellee /
  Cross Appellant*,

 v.

JB VIVA VEGAS, LP,

  *Defendant – Appellant /
  Cross Appellee.*

Nos.  24-2791
      24-3047

D.C. No.
2:19-cv-00499-
JAD-VCF

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 5, 2025
Las Vegas, Nevada

Filed January 6, 2026

Before: Johnnie B. Rawlinson, Eric D. Miller, and Roopali H. Desai, Circuit Judges.

Opinion by Judge Desai

## SUMMARY[*]

### Multiemployer Pension Plan Amendments Act

The panel reversed the district court's grant of summary judgment in favor of the Nevada Resort Association-International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust, and remanded, in an action brought by JB Viva Vegas, L.P., to challenge withdrawal liability under the Multiemployer Pension Plan Amendments Act.

The MPPAA amended the Employee Retirement Income Security Act to impose liability on employers, like JB, that withdraw from multiemployer pension plans, such as the plan administered by the Trust. But an exemption from withdrawal liability exists for employers contributing to plans that primarily cover "employees in the entertainment industry." The panel held that, under the plain text of the statute, there is no minimum amount of entertainment work required for an individual to be an employee in the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

entertainment industry under the MPPAA. And even if the text were ambiguous, the best reading of the exception is that "employees in the entertainment industry" are individuals performing any amount of entertainment work. Accordingly, the panel held that the Trust's plan primarily covered "employees in the entertainment industry" because there is no minimum entertainment-work requirement, and the majority of employees covered by the plan perform some entertainment work.

## COUNSEL

Christopher M. Humes (argued), Adam P. Segal, and William D. Nobriga, Brownstein Hyatt Farber Schreck LLP, Las Vegas, Nevada, for Plaintiff-Appellee.

Eric D. Field (argued), Littler Mendelson PC, Washington, D.C.; Kelsey Stegall, Littler Mendelson PC, Las Vegas, Nevada; for Defendant-Appellant.

**OPINION**

DESAI, Circuit Judge:

JB Viva Vegas, L.P. ("JB") sued the Nevada Resort Association-International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada Local 720 Pension Trust ("Trust") to challenge withdrawal liability under the Multiemployer Pension Plan Amendments Act ("MPPAA"). JB argues that the Trust primarily covers "employees in the entertainment industry," and thus JB qualifies for the entertainment exception to withdrawal liability. The district court granted summary judgment in the Trust's favor, and JB appealed. We hold that there is no minimum amount of entertainment work required for an individual to be an "employee[] in the entertainment industry" under the MPPAA. We reverse and remand.

**BACKGROUND**

The MPPAA amended the Employee Retirement Income Security Act ("ERISA") to impose liability on employers that withdraw from multiemployer pension plans. 29 U.S.C. § 1381(a). But an exemption from withdrawal liability exists for employers contributing to plans that primarily cover "employees in the entertainment industry." 29 U.S.C. § 1383(c)(1). The parties dispute whether individuals who perform any amount of work in the entertainment industry qualify as "employees in the entertainment industry" under the MPPAA.

The Trust administers a multiemployer pension benefit plan that covers employees performing convention and/or entertainment work in southern Nevada. The MPPAA

defines the "entertainment industry" to include theater, motion picture, radio, television, sound or visual recording, music, and dance productions. 29 U.S.C. § 1383(c)(2)(A). Work performed for conventions and trade shows falls outside the definition of the entertainment industry. For example, a stagehand might construct stages for both conventions and theatrical productions, but only the latter is considered work in the entertainment industry under the MPPAA. *See id.*

For many years, employees covered by the Trust's pension plan primarily performed entertainment work. However, in recent years, hotels and other Las Vegas venues shifted to hosting more conventions and trade shows than traditional entertainment productions, so employees covered by the plan started to earn more of their wages through convention work. For instance, in 2016, while the majority of plan employees earned some of their wages through entertainment work, only 35 percent earned more than half of their wages through entertainment work. After an audit revealed this trend towards convention work, the Trust amended its plan restatement in 2013 to state that it "is not an Entertainment Plan under ERISA."

From 2008 to 2016, JB contributed to the Trust's plan on behalf of the stagehands for its theatrical production of *Jersey Boys*. In September 2016, the musical closed, and JB stopped contributing to the plan. The Trust sent JB a letter, asserting that it owed $913,315 in withdrawal liability. JB requested review of the Trust's assessment, but the Trust never responded.

JB initiated arbitration, asserting that it qualifies for the entertainment exception to withdrawal liability. The arbitrator entered an award in favor of JB, ordering the Trust

to rescind its withdrawal liability assessment. The arbitrator found that (1) the plan was an entertainment plan in 2008, when JB first joined; (2) the Trust failed to provide updated data proving that it is no longer an entertainment plan; and (3) the Trust improperly amended its plan in violation of ERISA.

The Trust filed suit to vacate or modify the arbitration award in the district court. The district court found that the arbitrator improperly shifted the burden of proof to the Trust and should have determined the plan's status as an entertainment plan based on the year that JB withdrew from the plan, rather than the year it joined. The district court thus vacated the award and remanded to the arbitrator.

On remand, the arbitrator granted summary judgment in the Trust's favor and ordered JB to pay withdrawal liability. The arbitrator concluded that the MPPAA is ambiguous because it does not specify the amount of entertainment work an employee must perform to qualify as an entertainment employee. Moreover, the arbitrator held that the Trust reasonably determined that its plan does not "primarily cover[] employees in the entertainment industry" because less than half of its employees earned more than half of their wages from entertainment work. 29 U.S.C. § 1383(c)(1).

JB brought an action in the district court to vacate or modify the arbitration award. Both parties moved for summary judgment. The district court granted summary judgment to the Trust. It affirmed the arbitrator's award, finding that the plan does not primarily cover entertainment employees because fewer than half of its employees earned the majority of their wages from entertainment work. JB

appealed the district court's grant of summary judgment, and the Trust cross-appealed.[1]

## STANDARD OF REVIEW

"We review de novo the district court's grant of summary judgment." *Penn Cent. Corp. v. W. Conf. of Teamsters Pension Tr. Fund*, 75 F.3d 529, 533 (9th Cir. 1996). We also review de novo questions of law, including questions of statutory interpretation. *Trs. of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir. 1986). "Whether a withdrawal within the meaning of the statute has occurred presents a mixed question of law and fact," *Penn Cent.*, 75 F.3d at 533, which we review de novo, *Carpenters Pension Tr. Fund for N. Cal. v. Underground Constr. Co.*, 31 F.3d 776, 778 (9th Cir. 1994); *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015).

## ANALYSIS

Congress enacted the MPPAA because ERISA "did not adequately protect multiemployer pension plans from the adverse consequences that resulted when individual employers terminated their participation in, or withdrew from, multiemployer plans." *Resilient Floor*, 801 F.3d at 1088 (citation modified); *accord H.C. Elliott, Inc. v. Carpenters Pension Tr. Fund for N. Cal.*, 859 F.2d 808, 811 (9th Cir. 1988). "[A] significant number of multiemployer plans were experiencing extreme financial hardship as a

---

[1] In addition to the minimum entertainment-work requirement, JB appeals other issues that the district court did not address. On cross-appeal, the Trust also urges us to decide certain issues that the district court did not reach. We decline to decide them in the first instance. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

result of individual employer withdrawals from the plans, which saddled the remaining employers with increased funding obligations." *Resilient Floor*, 801 F.3d at 1088 (citation modified). Under the MPPAA, an employer that withdraws from a multiemployer pension plan is liable for its share of the plan's unfunded vested benefits. *Resilient Floor*, 801 F.3d at 1089 (citing 29 U.S.C. § 1381(a)). Generally, an employer withdraws, and thus owes withdrawal liability, if it "permanently ceases" its work in the plan's jurisdiction. 29 U.S.C. § 1383(a).

The MPPAA provides an exception for employers operating and contributing to plans in the entertainment industry. The entertainment exception exempts an employer from paying withdrawal liability if (1) the employer contributes to the plan "for work performed in the entertainment industry, primarily on a temporary or project-by-project basis," (2) "the plan primarily covers employees in the entertainment industry," and (3) the employer ends its entertainment work in the jurisdiction and does not resume the work within five years. 29 U.S.C. § 1383(c)(1), (b)(2)(B)(ii) (as interpreted in *Resilient Floor*, 801 F.3d at 1089).

Here, the parties agree that a pension plan "primarily" covers entertainment employees if more than half of the covered individuals are employees in the entertainment industry. But they disagree about whether there is a similar requirement for the minimum amount of entertainment work that an individual must perform to qualify as an "employee[] in the entertainment industry." The Trust argues that over 50 percent of an individual's work must be in the entertainment industry for the individual to be an "employee[] in the entertainment industry." JB counters that the statute imposes no minimum entertainment-work requirement.

Whether the Trust's plan "primarily covers employees in the entertainment industry" turns on the answer to this question. 29 U.S.C. § 1383(c)(1). If there is no minimum requirement, the plan "primarily covers employees in the entertainment industry" because more than half of the covered employees performed some entertainment work.[2] But if individuals must earn more than 50 percent of their wages from entertainment work to be "employees in the entertainment industry," the plan does not "primarily cover employees in the entertainment industry" because less than half of the covered employees performed the majority of their work in the entertainment industry.

Because this is an issue of first impression, we first examine the MPPAA's text to determine if its meaning is plain and unambiguous. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1133 (9th Cir. 2009). A statutory term is ambiguous "only if it is 'susceptible to more than one reasonable interpretation.'" *J.B. v. United States*, 916 F.3d 1161, 1167 (9th Cir. 2019) (quoting *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1173 (9th Cir. 2017)). If the text is ambiguous, "we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Ileto*, 565 F.3d at 1133 (quoting *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006)). But if the text is clear, the statutory "language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

---

[2] The parties dispute whether the relevant year for determining if the Trust's plan qualifies as an entertainment plan is 2008, when JB joined the plan, or 2016, when JB withdrew from the plan. Because it does not affect our decision, we assume without deciding that 2016 is the relevant year.

**A. The plain text of the entertainment exception unambiguously covers individuals performing any amount of entertainment work.**

For the entertainment exception to apply under the MPPAA, a pension plan must primarily cover "employees in the entertainment industry." 29 U.S.C. § 1383(c)(1). Under a plain reading of the text, an individual who performs work in the entertainment industry is an "employee[] in the entertainment industry." *Id.* That is all that is required. The text does not say that an individual's work must be "substantially" or "primarily" in the entertainment industry to qualify—any amount of entertainment work suffices. *See Guido*, 859 F.3d at 1172–74 (finding that the absence of limiting language in a statute unambiguously establishes that the statute is not so limited). The plain text of the exception is thus unambiguous and covers employees working in the entertainment industry without restriction. *See id.*

The Trust argues that the statute is ambiguous because it provides "no instruction on how to determine if an employee should qualify as in the entertainment industry." But such instructions are unnecessary if the text is plain on its face: an individual qualifies if they work in the entertainment industry. The Trust also argues that JB implicitly conceded that the statute is ambiguous because it proposed several different interpretations of the statute before the district court and it could not offer alternative interpretations if the text is unambiguous. But we need only look to the text to determine if the statute is ambiguous; it is irrelevant that JB argued alternative interpretations before the district court. *See id.* at 1173 (explaining that a statute is unambiguous even though one party proposed an alternative interpretation because "declaring that multiple reasonable interpretations exist does not make it so"). Based on the unambiguous text, we decline

the Trust's invitation to read in a minimum entertainment-work requirement.

The Trust argues that, even if the text of the statute is unambiguous, we should nevertheless impose a minimum entertainment-work requirement to avoid creating absurd results. *See United States v. Torres*, 995 F.3d 695, 705 (9th Cir. 2021) ("If the plain language of a statute renders its meaning reasonably clear, we will not investigate further *unless* its application leads to unreasonable or impracticable results." (quoting *United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010)) (citation modified)). Specifically, the Trust argues that it makes little sense to classify someone as an "employee[] in the entertainment industry" when the person performs a minimal amount of entertainment work. Further, the Trust contends that it is absurd to apply the entertainment exception to a pension plan that covers employees performing little entertainment work.

But we may override the plain meaning of a statute only when "it is *quite impossible* that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *Id.* (quoting *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015)). The Trust's arguments do not meet this "extremely high bar." *Id.* Given the part-time nature of most entertainment work, it is possible that Congress intended "employees in the entertainment industry" to include individuals who work multiple jobs or projects, some of which involve entertainment work and some of which do not. *See* 29 U.S.C. § 1383(c)(1) (describing covered entertainment work as "primarily on a *temporary or project-by-project basis*" (emphasis added)). After all, if the statute imposed a minimum entertainment-work requirement, individuals who perform thousands of hours of entertainment work, but

slightly more non-entertainment work, would not be considered "employees in the entertainment industry." Thus, it is not impossible that Congress intended this outcome.

Moreover, following the text's plain meaning does not absurdly expand the scope of the entertainment exception. The requirement that the plan primarily cover employees in the entertainment industry is only one of several conditions necessary for an employer to qualify for the entertainment exception. For example, an employer may claim the exception only if its contributions are "for work performed in the entertainment industry." 29 U.S.C. § 1383(c)(1). Thus, employers that contribute to a plan on behalf of employees performing non-entertainment work are unable to claim the entertainment exception, and that remains unchanged.

Ultimately, the Trust provides no evidence "to make plain the intent of Congress that the letter of the statute is not to prevail." *Torres*, 995 F.3d at 705 (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)). "Congress may enact legislation that turns out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the lawmaking authority, and not with the courts." *United States v. Paulson*, 68 F.4th 528, 542 (9th Cir. 2023) (citation modified). Because the entertainment exception is unambiguous, we must enforce its clear meaning and refrain from writing in limitations that do not exist.

**B.  Even if the text were ambiguous, the best reading of the exception is that "employees in the entertainment industry" are individuals performing any amount of entertainment work.**

Canons of statutory construction confirm that our interpretation is the best reading of the statute. "Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation modified). More specifically, when one part of a statute contains limiting language and another part does not, we read the latter's omission as "evidence of Congress's expressed intent not to impose" any limitation. *United States v. Youssef*, 547 F.3d 1090, 1094 (9th Cir. 2008) (per curiam); *see also Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (reasoning that "[t]he contrast between . . . two paragraphs makes clear that Congress kn[ew] how to impose express limits" in one paragraph and declined to do so in the other).

Here, Congress knew how to impose quantitative limits on who qualifies as an "employee[] in the entertainment industry," but it did not do so. In other parts of the MPPAA, Congress inserted language like "insubstantial portion," "substantially all," or "primarily" to limit the applicability of withdrawal exceptions to employers and plans conducting a certain amount of work in the relevant industry. *See* 29 U.S.C. § 1383(b)(1)(A)–(B) (construction exception applies only if "substantially all" of an employer's employees work in the construction industry and the plan "primarily" covers employees in the industry); *id.* § 1383(d)(2) (trucking exception applies only if "substantially all" of the contributions to the plan are made by employers "primarily" working in the trucking industry); *id.* § 1388(d)(1) (construction employer is liable for partial withdrawal if the employer continues an "insubstantial portion" of its construction work).

In contrast, the phrase "employees in the entertainment industry" does not include any limiting language. The exception requires that a plan "primarily" cover employees in the entertainment industry, but it does not require that employees "primarily" work in the entertainment industry. 29 U.S.C. § 1383(c)(1). In other words, the exception uses limiting language in other places, but it does not limit who qualifies as an entertainment employee. The existence of limiting language elsewhere in the MPPAA indicates that Congress intentionally excluded it here, intending for the entertainment exception to apply to employers who contribute to plans that cover individuals performing any amount of entertainment work.[3] *See Russello*, 464 U.S. at 23.

The Trust argues that the entertainment exception must be read narrowly to impose some minimum amount of entertainment work, otherwise our reading would undermine the purpose of the MPPAA and the exception. To be sure, when a statute is "qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision." *Comm'r of Internal Revenue v.*

---

[3] The Trust points out that Congress also omitted language describing how to measure the amount of an employee's entertainment work, yet JB agrees that a proper unit of measurement is an employee's wages, as used in other parts of the statute. *See* 29 U.S.C. § 1399(c)(1)(C)(i)(I) (calculating withdrawal payments based on contribution base units, or employees' wages). The Trust thus contends that the inclusion of language in one part of the MPPAA does not preclude us from reading that language into another part of the statute. But the omission of a unit of measurement in the entertainment exception is consistent with our interpretation. If Congress did not intend to define "employees in the entertainment industry" based on the amount of entertainment work they perform, then including a unit of measurement in the exception would be unnecessary.

*Clark*, 489 U.S. 726, 739 (1989). But this general presumption cannot override a "fair reading" of the statutory exception. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018)). "[J]ust as we cannot properly *expand* [an exception] beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Id.* (citation omitted). And, as already explained, our reading of the text does not undermine the purpose of the MPPAA or the entertainment exception because an employer can claim the exception only if its contributions are primarily for temporary entertainment work. 29 U.S.C. § 1383(c)(1).

## CONCLUSION

For the foregoing reasons, we hold that the Trust's plan primarily covers "employees in the entertainment industry" because there is no minimum entertainment-work requirement and the majority of employees covered by the plan perform some entertainment work.

**REVERSED and REMANDED.**