**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

ERIC LOPEZ,
*Defendant-Appellee*.

No. 19-50305

D.C. No.
3:19-cr-00261-L-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted February 9, 2021
Pasadena, California

Filed May 21, 2021

Before: Danny J. Boggs,[*] Milan D. Smith, Jr., and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith Jr.

---

[*] The Honorable Danny J. Boggs, Senior United States Circuit Judge
for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

---

**Criminal Law**

The panel affirmed the district court's imposition of a sentence pursuant to the safety valve set forth in 18 U.S.C. § 3553(f), which allows a district court to sentence a criminal defendant below the mandatory minimum for certain drug offenses if the defendant meets the criteria in § 3553(f)(1) through (f)(5).

In the First Step Act of 2018, Congress amended § 3553(f)(1), which focuses only on a criminal defendant's prior criminal history as determined under the United States Sentencing Guidelines. As amended, § 3553(f)(1) requires a defendant to prove that he or she "does not have" the following: "(A) more than 4 criminal history points . . . (B) a prior 3-point offense . . . and (C) a prior 2-point violent offense."

Applying the tools of statutory construction—including § 3553(f)(1)'s plain meaning, the Senate's own legislative drafting manual, § 3553(f)(1)'s structure as a conjunctive negative proof, and the canon of consistent usage—the panel held that § 3553(f)(1)'s "and" is unambiguously conjunctive.

Concurring in part, dissenting in part, and concurring in the judgment, Judge M. Smith joined the majority in holding that a defendant's criminal history must satisfy all three

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

subsections of § 3553(f)(1) for that individual to be ineligible for safety valve relief. Disagreeing with the majority's interpretation of § 3553(f)(1)(C), he wrote that reading a "prior 2-point violent offense" as "a prior violent offense of at least 2 points" is not faithful to the plain text of that provision.

## COUNSEL

Daniel E. Zipp (argued), Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Robert S. Brewer, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellant.

Michael Marks (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellee.

## OPINION

MURGUIA, Circuit Judge:

Title 18 U.S.C. § 3553(f), commonly called the "safety valve," allows a district court to sentence a criminal defendant below the mandatory-minimum sentence for certain drug offenses if the defendant meets the criteria in § 3553(f)(1) through (f)(5). In 2018, Congress amended one of the safety valve's provisions: § 3553(f)(1). *See* First Step Act of 2018, Pub. L. No. 115-391, § 402, 132 Stat. 5194, 5221. Section 3553(f)(1) focuses only on a criminal defendant's prior criminal history as determined under the United States Sentencing Guidelines. *See generally* 18 U.S.C. § 3553(f)(1). As amended, § 3553(f)(1) requires a defendant to prove that he or she "does not have" the following: "(A) more than 4 criminal history points . . . (B) a prior 3-point offense . . . *and* (C) a prior 2-point violent offense." *Id.* § 3553(f)(1)(A)–(C) (emphasis added).[1]

As a matter of first impression, we must interpret the "and" joining subsections (A), (B), and (C) under § 3553(f)(1). If § 3553(f)(1)'s "and" carries its ordinary conjunctive meaning, a criminal defendant must have (A) more than four criminal-history points, (B) a prior three-point offense, *and* (C) a prior two-point violent offense, cumulatively, before he or she is barred from safety-valve relief under § 3553(f)(1). But if we rewrite § 3553(f)(1)'s "and" into an "or," as the government urges, a defendant must meet the criteria in only subsection (A), (B), *or* (C) before he or she is barred from safety-valve relief under

---

[1] "The defendant bears the burden of proving safety valve eligibility by a preponderance of the evidence." *United States v. Mejia-Pimental*, 477 F.3d 1100, 1104 (9th Cir. 2007).

§ 3553(f)(1).  Applying the tools of statutory construction, we hold that § 3553(f)(1)'s "and" is unambiguously conjunctive.  Put another way, we hold that "and" means "and."

## I.

This case involves criminal defendant Eric Lopez, a thirty-five-year-old man from South Gate, California.  In December 2018, Lopez attempted to drive across the United States-Mexico border in Otay Mesa, California.  A Customs and Border Protection Officer noticed a "soapy-odor" emanating from Lopez's vehicle and referred Lopez to secondary inspection.  The inspection of Lopez's vehicle revealed packages containing methamphetamine.  The government arrested Lopez and charged him with importing at least fifty grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 952 and 21 U.S.C. § 960.  Lopez pleaded guilty.

Lopez's conviction triggered a mandatory-minimum sentence of five years' imprisonment.  *See* 21 U.S.C. § 960(b)(2)(H).  At sentencing, Lopez requested a sentence below the five-year mandatory minimum pursuant to the safety valve, 18 U.S.C. § 3553(f).  The safety valve allows a district court to sentence a criminal defendant below a mandatory-minimum sentence for particular drug offenses if a defendant meets the criteria outlined in § 3553(f)(1) through (f)(5).  *See generally* 18 U.S.C. § 3553(f). Because the government conceded that Lopez met the criteria outlined in § 3553(f)(2) through (f)(5),[2] whether the district

---

[2] Section 3553(f)(2) prevents application of the safety valve if the defendant used violence or possessed a deadly weapon in the instant offense.  Section 3553(f)(3) prevents application of the safety valve if

court could sentence Lopez below the mandatory minimum turned on whether Lopez met the criteria in recently amended § 3553(f)(1). As amended, a defendant meets the criteria in § 3553(f)(1) if:

> (1) the defendant *does not have*—
>
>> (A) more than 4 criminal history points excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> (B) a prior 3-point offense, as determined under the sentencing guidelines; *and*
>>
>> (C) a prior 2-point violent offense, as determined under the sentencing guidelines[.]

*Id.* § 3553(f)(1) (emphasis added). In other words, § 3553(f)(1) bars a defendant from safety-valve relief only if that defendant has each of (A) more than four criminal-history points, (B) a prior three-point offense, *and* (C) a prior two-point violent offense.

The district court explained that Lopez's Presentence Investigation Report revealed only one relevant conviction under the Sentencing Guidelines. In December 2007, when

---

the defendant's instant offense resulted in serious bodily injury or death. Section 3553(f)(4) prevents application of the safety valve if the defendant acted as a leader or organizer in the instant offense. Section 3553(f)(5) prevents application of the safety valve if the defendant does not provide certain information to the government.

Lopez was twenty-two years old, he spray-painted a sign onto a building.  Police officers witnessed Lopez spray-paint the sign and arrested him for vandalism.  Lopez was convicted of vandalism in 2008.  Because Lopez ultimately served more than thirteen months of imprisonment for the vandalism conviction,[3] that conviction constituted a "3-point offense" under the Sentencing Guidelines.  *See* U.S. Sent'g Guidelines Manual § 4A1.1(a) (U.S. Sent'g Comm'n 2018) (explaining that, when calculating a defendant's criminal-history category, the district court must "[a]dd 3 points" for each prior sentence exceeding thirteen months of imprisonment).

In the district court, Lopez and the government agreed that Lopez's relevant criminal history—the single vandalism conviction—met the criteria in only subsection (B) ("prior 3-point offense") under § 3553(f)(1).  Lopez had neither (A) "more than 4 criminal history points" nor (C) a "prior 2-point violent offense" under § 3553(f)(1).  At sentencing, Lopez argued that § 3553(f)(1)'s "and" is plainly conjunctive, which meant that Lopez was eligible for safety-valve relief unless he had (A) more than four criminal-history points, (B) a prior three-point offense, *and* (C) a prior two-point violent offense.[4]  The government argued, to the contrary, that Lopez was excluded from safety-valve relief if he met any of the criteria in subsection (A), (B), *or* (C) under § 3553(f)(1).

---

[3] Lopez initially served three months of imprisonment and then served thirteen additional months of imprisonment for violating probation associated with the vandalism conviction.

[4] As previously noted, the government and Lopez agreed that he met the criteria outlined in the remainder of the safety valve, § 3553(f)(2) through (f)(5).

The district court recognized that whether Lopez's vandalism conviction precluded him from safety-valve relief turned on whether § 3553(f)(1)'s "and" is conjunctive or disjunctive. The district court concluded that § 3553(f)(1)'s "and" is ambiguous and invoked the rule of lenity to reach a conjunctive interpretation.[5] Lopez was eligible for safety-valve relief under the district court's conjunctive interpretation because, although his criminal history met subsection (B), his criminal history did not meet the criteria in subsections (A), (B), *and* (C) under § 3553(f)(1). The district court sentenced Lopez to four years of imprisonment, one year less than the five-year mandatory minimum. The government timely appealed Lopez's sentence.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's interpretation of a statute. *United States v. Mejia-Pimental*, 477 F.3d 1100, 1103 (9th Cir. 2007) (reviewing de novo a district court's statutory interpretation of the safety-valve statute).

## III.

### A.

The safety-valve provision allows a district court to sentence a criminal defendant below the mandatory-minimum sentence for particular drug offenses if a defendant meets the following five subsections in § 3553(f):

---

[5] The rule of lenity requires "grievous ambiguity" in criminal statutes to be resolved in favor of a criminal defendant. *See Maracich v. Spears*, 570 U.S. 48, 76 (2013) (citation omitted); *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006).

(1) the defendant does not have—

    (A) more than 4 criminal history points . . . ;

    (B) a prior 3-point offense . . . ; and

    (C) a prior 2-point violent offense . . . ;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the [instant drug] offense;

(3) the [instant drug] offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the [instant drug] offense . . . and was not engaged in a continuing criminal enterprise . . . ; and

(5) [before] the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the [instant drug] offense . . . .

18 U.S.C. § 3553(f)(1)–(5).

This case requires us to interpret one of those five provisions, § 3553(f)(1), which focuses on the defendant's

prior criminal history as determined under the Sentencing Guidelines.  *See generally id.* § 3553(f)(1).  Before 2018, § 3553(f)(1) barred any defendant with more than one criminal-history point under the Sentencing Guidelines from safety-valve relief.  *See Mejia-Pimental*, 477 F.3d at 1104.  The low threshold of more than one criminal-history point resulted in many drug offenders receiving mandatory-minimum sentences in instances that some in Congress believed were unnecessary and harsh.  Congress recognized the problem and sought to give district courts more flexibility.[6]

In December 2018, Congress passed the First Step Act, which amended § 3553(f)(1) and relaxed its criminal-history disqualifications.  First Step Act of 2018, 132 Stat. at 5221.  As amended, § 3553(f)(1) requires a defendant to prove that he or she "does not have" the following: "(A) more than 4 criminal history points . . . (B) a prior 3-point offense . . . *and* (C) a prior 2-point violent offense."  *Id.* § 3553(f)(1)(A)–(C) (emphasis added).    The issue before us is whether § 3553(f)(1)'s "and" is conjunctive or disjunctive.

## B.

Well-established rules of statutory construction guide our review in construing § 3553(f)(1).  We begin with the statutory text and end there if the statute's language is plain.  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020).  Unless defined in the statute, a statutory term receives its

---

[6]  *See, e.g.*, 164 Cong. Rec. S7756 (daily ed. Dec. 18, 2018) (statement of Sen. Bill Nelson) (asserting that the First Step Act "will allow judges to . . . use their discretion to craft an appropriate sentence to fit the crime" and noting one example of a person inexcusably receiving decades in prison for selling marijuana worth $350).

"ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The "limits of the drafters' imagination supply no reason to ignore the law's demands." *Bostock*, 140 S. Ct. at 1737 (holding that the clear statutory text in the Civil Rights Act of 1964 prohibited discrimination based on sexual orientation and gender identity even though members of Congress in 1964 "might not have anticipated their work would lead to th[at] particular result").

Here, the government concedes that the plain and ordinary meaning of § 3553(f)(1)'s "and" is conjunctive. The government's concession is well taken. For the past fifty years, dictionaries and statutory-construction treatises have instructed that when the term "and" joins a list of conditions, it requires not one or the other, but *all* of the conditions. *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* 46 (11th ed. 2020) (defining "and" to "indicate connection or addition"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116–20 (2012) (stating that "and" combines a list of conditions in a statute); *New Oxford American Dictionary* 57 (3rd ed. 2010) (stating that "and" is "used to connect words of the same part of speech, clauses, or sentences that are to be taken *jointly*") (emphasis added); *Oxford English Dictionary* 449 (2d ed. 1989) (stating that "and" introduces "a word, clause, or sentence, which is to be taken side by side with, along with, or in addition to, that which precedes it") (italics omitted); *Webster's Third New International Dictionary* 80 (1967) (defining "and" to mean "along with or together with" or "as well as").

Even if we had any doubt that Congress intended "and" in § 3553(f)(1) to receive its plain meaning, one glance at the Senate's legislative drafting manual would resolve it.

Indeed, the Senate's drafting manual instructs that the term "and" should be used to join a list of conditions—such as subsections (A), (B), and (C) in § 3553(f)(1)—when a conjunctive interpretation is intended:

> In a list of criteria that specifies a class of things—(1) use "or" between the next-to-last criterion and the last criterion to indicate that a thing is included in the class if it meets 1 or more of the criteria; and (2) use "and" to indicate that a thing is included in the class only if it meets all of the criteria.

Office of the Legislative Counsel, *Senate Legislative Drafting Manual* 64 (1997). Therefore, not only is the plain meaning of "and" conjunctive, but the Senate's own legislative drafting manual tells us that "and" is used as a conjunctive in statutes structured like § 3553(f)(1). This, too, the government concedes.

In addition to conceding that both the plain meaning of "and" and the Senate's legislative drafting manual support a conjunctive interpretation of § 3553(f)(1)'s "and," the government also concedes that § 3553(f)(1)'s structure as a conjunctive negative proof supports a conjunctive interpretation. A conjunctive negative proof includes a list of prohibitions stating, for example, "not A, B, and C." Scalia & Garner, *supra*, at 120. In *Reading Law*, Justice Scalia and Bryan Garner provide the following example of a conjunctive negative proof: "To be eligible, you must prove that you have not A, B, and C." *Id.* A conjunctive negative proof requires a person to prove that he or she does not meet A, B, and C, *cumulatively*. *See id.* at 119–20 (explaining that when the term "and" joins a list of prohibitions, "the listed

things are individually permitted but cumulatively prohibited").

Section 3553(f)(1) is a conjunctive negative proof. To be eligible for the safety valve, a defendant must prove that he or she "does not have" the following: (A) more than four criminal-history points, (B) a prior three-point offense, *and* (C) a prior two-point violent offense. 18 U.S.C. § 3553(f)(1)(A)–(C). This structure requires a defendant to prove that he or she does meet the criteria in subsections (A), (B), and (C), *cumulatively*. *See id.*; Scalia & Garner, *supra*, at 119–20. A conjunctive negative proof may not be very common, but it involves specific rules of usage that eliminate any potential ambiguity regarding "and" in statutes structured like § 3553(f)(1). *See* Scalia & Garner, *supra*, at 119–20. The use of "and" in a conjunctive negative proof is determinative. *See id.* Rewriting § 3553(f)(1)'s "and" into an "or," as the government urges, would mean that we, as judges, have the power to change § 3553(f)(1)'s entire structure into a *disjunctive* negative proof. *See id.* at 120.[7]

Last, the government concedes that the canon of consistent usage requires us to "presume" that § 3553(f)(1)'s "and" is a conjunctive. The canon of consistent usage requires a court to presume that "a given term is used to mean the same thing throughout a statute" and is "at its most

---

[7] Consider Justice Scalia and Bryan Garner's example of a disjunctive negative proof: "To be eligible for citizenship, you must prove that you have not (1) been convicted of murder; (2) been convicted of manslaughter; *or* (3) been convicted of embezzlement." *See* Scalia & Garner, *supra*, at 120 (emphasis added). The person applying for citizenship must "have done none" of the three conditions. *Id.* If a person is convicted only of murder, for example, that person is automatically ineligible for citizenship under this example of a disjunctive negative proof. *See id.*

vigorous when a term is repeated within a given sentence." *See Brown v. Gardner*, 513 U.S. 115, 118 (1994). This canon seeks consistent interpretations of a statutory term. *See id.* at 118–20.

The canon of consistent usage is relevant here because we previously interpreted a different "and" within § 3553(f) in the conjunctive—the "and" located at the end of § 3553(f)(4). *See Mejia-Pimental*, 477 F.3d at 1101, 1104. Section 3553(f)(4)'s final "and" joins § 3553(f)(1) (the provision at issue here), § 3553(f)(2) (prohibiting violence or possession of a dangerous weapon) § 3553(f)(3) (prohibiting death or serious bodily injury), § 3553(f)(4) (prohibiting a leader or organizer role), *and* § 3553(f)(5) (requiring certain information to be timely provided to the government). *See id.* That is why a criminal defendant must demonstrate that he or she meets all of these subsections under § 3553(f) before receiving safety-valve relief. *See id.* Because we have already interpreted § 3553(f)(4)'s final "and" in the conjunctive, the canon of consistent usage requires us to presume that § 3553(f)(1)'s "and" is also conjunctive. *See Brown*, 513 U.S. at 118. And because § 3553(f)(4)'s final "and"—as well as § 3553(f)(1)'s "and"—joins a list of conditions in the same lengthy sentence within § 3553(f), the presumption of consistent usage is "at its most vigorous." *See id.*

In sum, § 3553(f)(1)'s plain meaning, the Senate's own legislative drafting manual, § 3553(f)(1)'s structure as a conjunctive negative proof, and the canon of consistent usage lead to only one plausible reading of "and" here. Section 3553(f)(1)'s "and" is conjunctive. Thus, a defendant must meet the criteria in subsections (A) (more than four criminal-history points), (B) (a prior three-point offense), *and* (C) (a prior two-point violent offense) to be barred from

safety-valve relief by § 3553(f)(1).  This means one of (A), (B), or (C) is not enough.  A defendant must have all three before § 3553(f)(1) bars him or her from safety-valve relief.

## C.

The government argues that we should disregard § 3553(f)(1)'s plain meaning, disregard § 3553(f)(1)'s structure as a conjunctive negative proof, disregard the Senate's legislative drafting manual, and inconsistently interpret "and" within § 3553(f).  The government contends that § 3553(f)(1)'s "and" remains "ambiguous" and urges us to resolve that ambiguity by rewriting § 3553(f)(1)'s "and" into an "or."

In support, the government cites a handful of cases in which we construed the statutory term "and" to mean "or" because not doing so would have (1) rendered other statutory language superfluous or (2) produced absurd results.  *See Confederated Tribes and Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990–91 (9th Cir. 2020) (construing the term "and" disjunctively because not doing so would render other statutory language superfluous); *United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1051 (9th Cir. 2003) (same); *Alaska v. Lyng*, 797 F.2d 1479, 1482 n.4 (9th Cir. 1986) (construing the term "and" disjunctively when interpreting the phrase "prospective community centers and recreational areas" because not doing so would defy common sense); *see also United States v. Fisk*, 70 U.S. (3 Wall.) 445, 447–48 (1865) (construing "and" to mean "or" when not doing so would produce results that defy common sense).   These cases are distinguishable because they construed "and" to mean "or" neither in a conjunctive negative proof like § 3553(f)(1) nor when the canon of consistent usage required the court to vigorously presume that "and" is a conjunctive.

But, more to the point, the cases the government cites do not apply here because giving § 3553(f)(1)'s "and" its plain meaning neither produces absurd results nor renders other statutory terms superfluous.

## 1.

The government first argues that construing § 3553(f)(1)'s "and" in the conjunctive produces absurd results. We may avoid giving a statutory term its plain meaning if doing so would produce absurd results. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000). But we recently explained that the absurdity canon is "confined to situations where it is *quite impossible* that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone." *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) (internal citation and quotation marks omitted) (emphasis added); *see also Crooks v. Harrelson*, 282 U.S. 55, 60 (1930) ("[T]o justify a departure from the letter of the law upon [the absurdity] ground, the absurdity must be so gross as to shock the general moral or common sense" and there "must be something to make plain the intent of Congress that the letter of the statute is not to prevail.").

To avoid absurdity, the plain text of Congress's statute need only produce "rational" results, not "wise" results. *See In re Hokulani Square*, 776 F.3d at 1088. The bar for "rational" is quite low. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575–76 (1982) (refusing to rewrite a federal maritime statute when the statute's clear text provided a seaman with more than $300,000 in damages for only $412 in unpaid wages). This is because the "remedy for any dissatisfaction with the results in particular [statutory-construction] cases lies with Congress and not

with [the courts].""  *Id.*  Although "Congress may amend the statute[,] we may not."  *Id.* at 576.

In this case, the government contends that construing § 3553(f)(1)'s "and" in the conjunctive produces "absurd" hypothetical results.  For instance, the government points out that a career offender with several drug convictions—but who never committed a violent act—could possibly become eligible for safety-valve relief under a conjunctive interpretation.  The government's hypothetical career offender presumably would have (A) more than four criminal-history points and (B) a prior three-point offense, but not (C) a prior two-point violent offense, under § 3553(f)(1).[8]

The government's career-offender hypothetical does not produce "absurd" results for multiple reasons.  First, that hypothetical does not grapple with the purpose of each subsection under § 3553(f)(1).  Subsection (A) targets recidivism (more than four criminal-history points), subsection (B) targets serious offenses (a prior three-point offense) and subsection (C) targets violence (a prior two-point violent offense).  Congress could have required all three elements before subjecting a defendant to mandatory-minimum sentences for drug offenses.  Indeed, a conjunctive interpretation results in § 3553(f)(1) not barring *non-violent*, repeat drug offenders from safety-valve relief.  But *violent*, repeat drug offenders will almost always be barred under a conjunctive interpretation.  When enacting the First Step

---

[8] Notably, the career offender in the government's hypothetical would also need to satisfy the remainder of the safety-valve requirements to be eligible for relief.  *See* 18 U.S.C. § 3553(f)(2)–(5).  And if the career drug offender did so, a district court would still retain discretion to sentence the career drug offender *above* the mandatory-minimum sentence.  *See id.* § 3553(f).

Act, Congress could have made a policy decision to target violent drug offenders.  This is, at minimum, a "rational" policy result.

Second, the government's career-offender hypothetical focuses only on § 3553(f)(1) and disregards the remainder of the safety-valve requirements, which the defendant must also satisfy before becoming eligible for safety-valve relief. Unlike § 3553(f)(1)'s focus on the defendant's *prior* criminal history, the remainder of the safety-valve statute focuses on the defendant's *instant* offense.  *See* 18 U.S.C. § 3553(f)(2)–(5) (prohibiting the defendant from doing the following in the instant offense—act with or threatening violence, possessing deadly weapons, inflicting serious bodily injury, acting as a leader or organizer, and keeping certain information from the government).  When enacting the First Step Act, Congress could have made a policy decision that the safety valve should focus more on the defendant's instant offense rather than the defendant's prior criminal history.  This, too, is a "rational" policy result.

Third, if we accepted the government's absurdity argument and rewrote § 3553(f)(1)'s "and" into an "or," we would create results—not otherwise present under a conjunctive interpretation—that are arguably more confounding than the government's career-offender hypothetical.  For instance, Lopez would lose the possibility of safety-valve relief only because he spray-painted a sign onto a building almost fourteen years ago.  *See id.* § 3553(f)(1)(B).  And a criminal defendant convicted of selling a small amount of marijuana (such as a marijuana cigarette), who received a sentence that exceeded thirteen months of imprisonment, could not receive safety-valve

relief.[9] *See id.* (referring to a "3-point offense"); U.S. Sent'g Guidelines Manual § 4A1.1(a) (explaining that the district court must "[a]dd three points" to a defendant's criminal-history category for each sentence exceeding thirteen months of imprisonment). The government's request that we rewrite § 3553(f)(1)'s "and" into an "or" based on the absurdity canon is simply a request for a swap of policy preferences. But dissatisfaction with a statute's policy results is an insufficient ground to rewrite Congress's clear and unambiguous text. *See In re Hokulani Square*, 776 F.3d at 1088 ("The absurdity canon isn't a license for us to disregard statutory text where it conflicts with our policy preferences."); *see also Griffin*, 458 U.S. at 575–76.

In the end, Congress amended the safety-valve provision in 2018 to give district courts discretion to avoid situations in which drug offenders must receive a sentence that is unduly harsh because of a mandatory minimum. Because a conjunctive interpretation of § 3553(f)(1)'s "and" remains "in harmony with what is thought to be the spirit and purpose of the act," this case lacks the "rare and exceptional circumstances" that allow a court to disregard Congress's

---

[9] Multiple states allow for such a conviction to result in more than thirteen months of imprisonment. *See, e.g.*, Ala. Code §§ 13A-12-211, 13A-5-6(a)(2) (requiring a mandatory-minimum sentence of at least two years imprisonment for selling *any* amount of marijuana); Miss. Code. Ann. § 41-29-139(b)(2)(A) (allowing a sentence of imprisonment of not more than three years for possessing "thirty . . . grams *or less*" of marijuana with intent to distribute) (emphasis added); Mo. Ann. Stat. §§ 558.011, 579.020 (allowing a sentence of imprisonment of not more than four years for selling thirty-five grams *or less* of marijuana). Also, a defendant convicted twice of possessing marijuana for personal use might be excluded from safety-valve relief. *See* Ala. Code §§ 13A-12-213(c), 13A-5-6(a)(4) (allowing a sentence of not more than five years imprisonment for any person who is convicted twice of possessing marijuana for personal use).

clear and unambiguous statute via the absurdity canon.  *See Crandon v. United States*, 494 U.S. 152, 168 (1990) (citation and quotation marks omitted); *see also In re Hokulani Square*, 776 F.3d at 1088.

### 2.

The government's next argument involves the canon against surplusage.  This canon of construction requires a court, if possible, to give effect to each word and clause in a statute.  *See Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001); *see also Lamie v. United States Tr.*, 540 U.S. 526, 536 (2004); *United States v. Barraza-Lopez*, 659 F.3d 1216, 1220 (9th Cir. 2011) (explaining that a court should avoid interpreting statutes to render any word or clause superfluous).  The government argues that interpreting § 3553(f)(1)'s "and" as a conjunctive renders subsection (A) of § 3553(f)(1) superfluous because any defendant who has (B) a "prior 3-point offense" and (C) a "prior 2-point violent offense" will always have five criminal history points and therefore meet (A) "more than 4 criminal history points."

But the government's argument fails to consider a defendant who has only one three-point violent offense under the Sentencing Guidelines; that defendant would have (B) a "prior 3-point offense" and (C) a "prior 2-point violent offense" but would have only three criminal-history points, *not* (A) "more than 4 criminal history points."  *See* 18 U.S.C. § 3553(f)(1)(A)–(C).  Put another way, a three-point violent offense can simultaneously satisfy two subsections, (B) and (C), while not satisfying subsection (A).  *See id.*  Subsection (A) is not superfluous under a conjunctive interpretation; it

clarifies that a single three-point violent offense does not bar a defendant from safety-valve relief. [10]

Finally, even if we agreed that subsection (A) is superfluous under a conjunctive interpretation, our holding would not change. The canon against surplusage is just a rule of thumb. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (stating that "canons of construction are no more than rules of thumb that help courts determine the meaning

---

[10] The government argues that 2-point violent offenses and 3-point violent offenses are mutually exclusive under United States Sentencing Guidelines § 4A1.1. The government contends that a "2-point violent offense" covers violent convictions with an imprisonment sentence *between* sixty days and thirteen months. *See* U.S. Sent'g Guidelines Manual § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."). The government then contends that any violent conviction resulting in more than thirteen months of imprisonment is a "3-point violent offense." *See id.* § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding [thirteen months]."). But § 4A1.1 was created to "add" criminal history points for a Sentencing Guidelines calculation. In that context, it makes sense to "add points" for each sentence only once under § 4A1.1 because not doing so would overstate a defendant's criminal history and cause an inflated Guidelines range.

Here, in the safety-valve context, we are not "adding" criminal-history points to form a Guidelines calculation. We are determining the meaning of an offense under § 3553(f)(1)(C). Because Congress presumably targeted violent offenses with subsection (C)'s "2-point violent offense," it of course targeted more serious violent offenses (three-point violent offenses). But under the government's interpretation, a ninety-day sentence—but not a fifteen-year sentence—involving violence satisfies subsection (C). We reject that nonsensical interpretation and construe a "2-point violent offense" to cover "violent offenses with sentences of at least 60 days," as the only source to interpret that phrase has done. *See* Committee on the Judiciary, 115th Congress, *The Revised First Step Act of 2018 (S.3649)* (2-point violent offenses are "violent offenses with sentences of at least 60 days").

of legislation"); *Chickasaw Nation*, 534 U.S. at 94 (explaining that "canons are not mandatory rules"); *see also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173–74 (2021) (Alito, J., concurring) ("[T]he Scalia-Garner treatise makes it clear that interpretive canons are not rules of interpretation in any strict sense but presumptions about what an intelligently produced text conveys.") (internal quotation marks and citation omitted).  The canon against surplusage does not supersede a statute's plain meaning and structure, while, at the same time, requiring us to inconsistently interpret the same word in the same sentence.  *See, e.g.*, *Lamie*, 540 U.S. at 536 (choosing to follow the plain meaning despite that plain meaning rendering certain words in the statute surplusage); *Conn. Nat'l Bank*, 503 U.S. at 253–54 ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others," plain meaning, because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  This is especially true for criminal statutes, such as § 3553(f)(1), because substantial "overlap between . . . clauses" is "not uncommon in criminal statutes."  *See Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *see also Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995).    Accordingly, even if we were to accept the government's surplusage argument, too many reasons— plain meaning, structure, the Senate's own legislative drafting manual, and consistent interpretations—show that the canon against surplusage would yield in this specific context.[11]

---

[11] We also reject the government's "alternative interpretation" of § 3553(f)(1).  This "alternative interpretation" allows the em-dash in § 3553(f)(1)'s introductory phrase ("does not have—") to inject "does not have" twice more into § 3553(f)(1) and, for all practical purposes,

**D.**

The government also argues that a conjunctive interpretation of § 3553(f)(1)'s "and" conflicts with legislative history.  Because § 3553(f)(1)'s "and" is not ambiguous, we need not consult legislative history.  *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("Even [courts] who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'") (citation omitted); *see also Bostock*, 140 S. Ct. at 1750 ("[L]egislative history can never defeat unambiguous statutory text.").  But even if we considered legislative history, our holding would not change because the legislative history does not show that a conjunctive interpretation of § 3553(f)(1)'s "and" is inconsistent with Congress's intent.

Each party manages to point out a few floor statements or committee documents to support its interpretation of § 3553(f)(1)'s "and."  On one hand, Lopez states that the First Step Act modified the safety valve to give back discretion to district courts to avoid unduly harsh mandatory-minimum sentences when unnecessary.  This contention finds support in floor statements by United States Senators. *See, e.g.*, 164 Cong. Rec. S7756 (daily ed. Dec. 18, 2018)

---

turn § 3553(f)(1) into a disjunctive statute.  At the same time, the government contends that the first em-dash in § 3553(f) should not apply to (f)(1) through (f)(5) in the same way.  No Ninth Circuit precedent has ever employed this far-fetched and quixotic em-dash theory or, worse, employed that theory inconsistently in the same subsection of the same statute, as the government requests that we do here.  The government concedes that if we applied this em-dash theory consistently in § 3553(f), we would destroy the entire safety-valve structure and allow a defendant to receive safety-valve relief if he or she met the criteria in § 3553(f)(1), § 3553(f)(2), § 3553(f)(3), § 3553(f)(4), *or* § 3553(f)(5).

(statement of Sen. Bill Nelson) (opining that the First Step Act "will allow judges to do the job that they were appointed to do—to use their discretion to craft an appropriate sentence to fit the crime"); *id.* at S7764 (statement of Sen. Cory Booker) (explaining that the First Step Act "will reduce mandatory minimums and give judges discretion back—not legislators but judges who sit and see the totality of the facts"); *id.* at S7774 (statement of Sen. Dianne Feinstein) (stating that the First Step Act will give "more discretion to judges to sentence below mandatory minimums" under the safety valve).[12] But we recognize that Lopez's conjunctive interpretation and the government's disjunctive interpretation both give at least some judicial discretion back to district court judges. That is because each interpretation expands safety-valve eligibility beyond those with only one criminal-history point.

On the other hand, the government points out that Senator Patrick Leahy described the First Step Act as a "*modest* expansion of the safety valve." *See id.* at S7749 (statement of Sen. Patrick Leahy) (emphasis added). But Senator Leahy, in the same breath, stated that he hoped the First Step Act was "a turning point" and remarked: "I truly believe the error of mandatory minimum sentencing is

---

[12] A few senators noted that the First Step Act would help "low-level, non-violent offenders." *See, e.g.*, 164 Cong. Rec. S7739 (statement of Sen. Chuck Schumer) (explaining that the First Step Act will "give judges more judicial discretion in sentencing for low-level, nonviolent drug offenders who cooperate with the government"). This does not help the government because Senator Schumer did not say the First Step Act will give more judicial discretion *only* in cases involving low-level, nonviolent drug offenders. *Id.* But even if he did, Lopez is a quintessential low-level, non-violent defendant who would be excluded from safety-valve relief under the government's disjunctive interpretation.

coming to an end." *Id.* Moreover, because the First Step Act changed only one of five subsections for safety-valve eligibility, it can be characterized as "modest" even assuming a conjunctive interpretation.

The government also cites a bullet-point summary of the First Step Act prepared by the Senate Judiciary Committee. The summary states: "[O]ffenders with prior '3 point' felony convictions (sentences exceeding one year and one month) or prior '2 point' violent offenses (violent offenses with sentences of at least 60 days) will *not* be eligible for the safety valve absent a judicial finding that those prior offenses substantially overstate the defendant's criminal history and danger of recidivism." *See* Committee on the Judiciary, *The Revised First Step Act of 2018 (S.3649)*. But that bullet-point summary discussed a different version of § 3553(f)(1)—a version that, notably, provided a district court with judicial discretion to altogether disregard a defendant's prior criminal history under § 3553(f)(1). *See id.*

In sum, neither party cites anything in the First Step Act's thin legislative history to tip the scales either way. But even if one party could do so here, "legislative history can never defeat unambiguous statutory text." *Bostock*, 140 S. Ct. at 1750.

### E.

Finally, we address the rule of lenity, a canon of statutory construction that requires "grievous ambiguity" in criminal statutes to be resolved in favor of a criminal defendant. *See Maracich v. Spears*, 570 U.S. 48, 76 (2013) (citation omitted); *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006). The rule of lenity prevents a court from giving the text of a criminal statute "a meaning that is different from

its ordinary, accepted meaning, and that disfavors the [criminal] defendant." *Burrage v. United States*, 571 U.S. 204, 216 (2014). The rule of lenity is not just a "convenient" canon of statutory construction; it is rooted in "fundamental principles of due process [mandating] that no individual be forced to speculate . . . whether his [or her] conduct" is covered by a criminal statute. *See Dunn v. United States*, 442 U.S. 100, 112 (1979); *see also United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Chief Justice John Marshall stating that the "rule that penal laws are to be construed strictly, is perhaps not much less old than [statutory] construction itself").

Because § 3553(f)(1)'s "and" is not ambiguous, we do not invoke the rule of lenity here. But assuming we accepted the government's contention that the term "and" here is ambiguous, we would invoke the rule of lenity to end with a conjunctive interpretation. We would not require a criminal defendant to read § 3553(f)(1)'s text, ignore the plain meaning of "and," ignore the Senate's legislative drafting manual, ignore § 3553(f)(1)'s structure, ignore our prior case law interpreting "and" in § 3553(f)(4), and then, somehow, predict that a federal court would rewrite § 3553(f)(1)'s "and" into an "or." *See Burrage*, 571 U.S. at 216; *Dunn*, 442 U.S. at 112; *cf. Bostock*, 140 S. Ct. at 1738 (stating that judges cannot "remodel" statutory terms and "deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations").

## IV.

For the reasons above, we affirm the district court's sentence and hold that § 3553(f)(1)'s "and" is unambiguously conjunctive. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1050 (9th Cir. 2000)

(stating that we may "affirm the district court on a ground not selected by the district judge so long as the record fairly supports such an alternative disposition") (citation and quotation marks omitted).[13]

We recognize that § 3553(f)(1)'s plain and unambiguous language might be viewed as a considerable departure from the prior version of § 3553(f)(1), which barred any defendant from safety-valve relief if he or she had more than one criminal-history point under the Sentencing Guidelines. *See Mejia-Pimental*, 477 F.3d at 1104.     As a result, § 3553(f)(1)'s plain and unambiguous language could possibly result in more defendants receiving safety-valve relief than some in Congress anticipated.

But sometimes Congress uses words that reach further than some members of Congress may have expected. *See Bostock*, 140 S. Ct. at 1749 (noting that Congress's plain language sometimes reaches "beyond the principal evil [that] legislators may have intended or expected to address," but courts remain obligated to give Congress's language its plain meaning) (citation and quotation marks omitted). We cannot ignore Congress's plain and unambiguous language just because a statute might reach further than some in Congress expected. *See id.* ("[I]t is ultimately the *provisions* of [Congress's] legislative commands rather than the principal *concerns* of our legislators by which we are governed.") (emphasis added) (citation and quotation marks omitted).

Section 3553(f)(1)'s plain and unambiguous language, the Senate's own legislative drafting manual, § 3553(f)(1)'s

---

[13] The district court deemed § 3553(f)(1)'s "and" ambiguous and invoked the rule of lenity to reach a conjunctive interpretation.

structure as a conjunctive negative proof, and the canon of consistent usage result in only one plausible reading of § 3553(f)(1)'s "and" here: "And" is conjunctive. If Congress meant § 3553(f)(1)'s "and" to mean "or," it has the authority to amend the statute accordingly. We do not.

**AFFIRMED.**

M. SMITH, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment:

I join the majority opinion except for its contention that 18 U.S.C. § 3553(f)(1) does not contain superfluous language. *See* Majority Opinion at 15–16, 20–21. The majority posits that "a three-point violent offense can simultaneously satisfy two subsections, (B) and (C)." *Id.* at 20. Subsection (B) provides for application of the safety valve for an individual who does not have "a prior 3-point offense, as determined under the sentencing guidelines," and subsection (C) gives relief for a defendant who does not have "a prior 2-point violent offense, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1)(B)–(C). Thus, under the majority's interpretation, when a defendant has a prior three-point violent offense, that offense counts as both "a prior 3-point offense," *id.* § 3553(f)(1)(B), *and* "a prior 2-point violent offense," *id.* § 3553(f)(1)(C). In effect, the majority interprets "a prior 2-point violent offense" to mean "a prior violent offense of at least 2 points." This reasoning allows the majority to avoid any surplusage in the statute.

If, instead, a prior three-point violent offense does *not* count as "a prior 2-point violent offense," *id.*, subsection (A) becomes redundant. Subsection (A) allows application of

the safety valve for a defendant who does not have "more than 4 criminal history points." *Id.* § 3553(f)(1)(A). If a single offense cannot fulfill the requirements of subsections (B) and (C), a defendant who has "a prior 3-point offense" and "a prior 2-point violent offense," will always have "more than 4 criminal history points," *id.* § 3553(f)(1), rendering subsection (A) surplusage.

The majority's attempt to avoid surplusage in § 3553(f)(1) conforms to general principles of statutory interpretation. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and internal quotation marks omitted)). However, "our preference for avoiding surplusage constructions is not absolute." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).

In interpreting "a prior 2-point violent offense" to mean "a prior violent offense of at least 2 points," the majority rewrites the plain language of the statute. Congress meant what it said. Two points is two points. Two points is not three points. An interpretive canon, such as the rule against surplusage, "is not a license for the judiciary to rewrite language enacted by the legislature." *United States v. Albertini*, 472 U.S. 675, 680 (1985). I agree with the majority that we should refuse to rewrite "and" to mean "or" in the context of § 3553(f)(1). The majority should apply that same principle of plain text analysis to interpretation of "a prior 2-point violent offense" in § 3553(f)(1)(C).

As further evidence that subsection (C) cannot be read as "a prior violent offense of at least 2 points," we need look only to the sentencing guidelines. The guidelines provide that in determining a defendant's criminal history category,

the district court should "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Next, the guidelines state that the court should "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days *not counted in (a)*." *Id.* § 4A1.1(b) (emphasis added). The guidelines' approach to three- and two-point offenses is mutually exclusive, as indicated by the final phrase of § 4A1.1(b). If a prior sentence is more than one year and one month, the district court assigns three points, and if the prior sentence is at least sixty days, but does not exceed one year and one month (*i.e.*, is "not counted in (a)"), the court assigns two points. Thus, a prior sentence is either a three-point offense *or* a two-point offense. A prior sentence cannot simultaneously be both a three-point offense *and* a two-point offense.

Not only does it make sense that Congress would mirror the guidelines when writing § 3553(f)(1), but the legislators themselves told us they did just that. Subsection (C) states that the disqualifying criminal history is "a prior 2-point violent offense, *as determined under the sentencing guidelines*." 18 U.S.C. § 3553(f)(1)(C) (emphasis added). Subsection (B) provides the same. *See id.* § 3553(f)(1)(B). When a district court determines, pursuant to the sentencing guidelines, that a prior offense is three points, that court cannot determine that the same prior offense is also two points because only an offense "of at least sixty days not counted" as a three-point offense can qualify as a two-point offense. U.S.S.G. § 4A1.1(b). The same is true in § 3553(f)(1). "[A] prior 3-point [violent] offense" is not also "a prior 2-point violent offense, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1)(B)–(C). Thus, I agree with the Government that a single prior three-point violent offense cannot fulfill subsections (B) and (C). *See* Majority Opinion at 21 n.10.

The majority attempts to distinguish § 3553(f)(1) from the sentencing guidelines by stating that "in the safety-valve context, we are not 'adding' criminal-history points to form a Guidelines calculation. We are determining the meaning of an offense under § 3553(f)(1)(C)." *Id.* at 21 n.10. For support, the majority references a summary released by the Senate Judiciary Committee, which states:

> [O]ffenders with prior "3 point" felony convictions (sentences exceeding one year and one month) *or* prior "2 point" violent offenses (*violent offenses with sentences of at least 60 days*) will *not* be eligible for the safety valve absent a judicial finding that those prior offenses substantially overstate the defendant's criminal history and danger of recidivism.

Committee on the Judiciary, 115th Congress, *The Revised First Step Act of 2018 (S.3649)* (some emphases added).

I put little stock in this summary for two reasons. First, "legislative history can never defeat unambiguous statutory text." *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1750 (2020); *see also* Majority Opinion at 25. The "unambiguous statutory text" says "a prior 2-point violent offense" not "a prior violent offense of at least 2 points." Second, that same summary uses "or" to connect subsections (B) and (C). I agree with the majority that "the plain and ordinary meaning of § 3553(f)(1)'s 'and' is conjunctive." Majority Opinion at 11. The Senate Judiciary Committee's "summary" fails to accurately summarize the plain language of the law and its use of "and." This gives me pause in accepting the summary's decision to use "violent offenses of at least 60 days" in a parenthetical as a way to break with the

unambiguous language of § 3553(f)(1)(C) and the sentencing guidelines.[14]

The textual evidence, both in the statute itself and the sentencing guidelines to which the statute references, points to only one conclusion: Congress intended to provide mutually exclusive categories for two- and three-point offenses.  The majority's decision to interpret "prior 2-point violent offense" as "a violent offense of at least 2 points" "would have us read an absent word," or, in this case, words, "into the statute." *Lamie*, 540 U.S. at 538.  This we cannot do.

While I agree with the Government that a conjunctive interpretation of "and" renders subsection (A) surplusage, I also agree with the majority that this superfluity does not change the outcome.  Majority Opinion at 21–22.  As the majority highlights, "[t]he canon against surplusage is just a rule of thumb." *Id.* at 21.  While we must strive to interpret a statute to avoid surplusage, "our hesitancy to construe statutes to render language superfluous does not require us to avoid surplusage at all costs." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 137 (2007).  In this case, the cost of applying the plain text of § 3553(f)(1)—"and" means "and"—is that subsection (A) is surplusage.  As the majority writes, "[a]lthough 'Congress may amend the statute[,] we may not.'"  Majority Opinion at 17 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982) (second alteration in original)).  If Congress wishes to avoid surplusage in § 3553(f)(1), it has power pursuant to Article I

---

[14] In the legislative history section of the majority opinion, the majority correctly notes that this "summary discussed a different version of § 3553(f)(1)."  Majority Opinion at 25.  But the majority then relies upon this same summary to analyze § 3553(f)(1)(C). *See id.* at 21 n.10.

of the Constitution to enact legislation to that effect. We can only carry out its will in applying the plain language of the statute as enacted.

I offer a final note regarding the Government's absurdity argument. I agree with the majority that reading "and" conjunctively does not produce absurd results. *See* Majority Opinion at 17–19. However, applying the plain text of subsection (C)—where "a prior 2-point violent offense" means just that—admittedly makes the absurdity issue a closer question. That is because a defendant could have an unlimited number of prior three-point offenses (including three-point offenses of a violent nature), satisfying subsection (B), but still qualify for the safety valve because that defendant did not also have "a prior 2-point violent offense" pursuant to subsection (C). 18 U.S.C. § 3553(f)(1)(C). While this appears to be an odd result, I do not believe it is absurd.

As the majority notes, there is a high bar for showing absurdity, especially in the face of unambiguous statutory language. *See* Majority Opinion at 16–17. The absurdity doctrine "is confined to situations 'where it is quite impossible that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone.'" *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) (quoting *Public Citizen v. U. S. Dep't of Justice*, 491 U.S. 440, 471 (1989) (Kennedy, J., concurring)). Allowing an individual who has multiple prior three-point offenses, but no prior two-point violent offenses, to be eligible for the safety valve is odd. And perhaps it "is not wise." *Id.* But it is the policy Congress plainly set forth by enacting § 3553(f)(1). It might be the case that Congress intended that the safety valve exclude only a very specific subset of individuals, as delineated by § 3553(f)(1).

Alternatively, Congress might have believed that there was something particularly disqualifying about having both a prior two-point violent offense and a prior three-point offense. "It is, however, not our job to find reasons for what Congress has plainly done." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002). Congress has clearly mandated that only individuals who have a prior three-point offense *and* a prior two-point violent offense (and, consequently, more than four criminal history points) are *potentially eligible*[15] for safety valve relief. *See* 18 U.S.C. § 3553(f)(1).[16]

The First Step Act "is far from a *chef d'oeuvre* of legislative draftsmanship." *Util. Air Reg. Grp. v. EPA*, 573

---

[15] I say "potentially eligible" because, as the majority states, "the career offender in the government's hypothetical would also need to satisfy the remainder of the safety-valve requirements to be eligible for relief." Majority Opinion at 17 n.8 (citing 18 U.S.C. § 3553(f)(2)–(5)). And even if an individual with multiple prior three-point offenses, but no prior two-point violent offense, satisfied the entirety of § 3553(f), "a district court would still retain discretion to sentence the career drug offender *above* the mandatory-minimum sentence." *Id.* (citing 18 U.S.C. § 3553(f)); *see also United States v. Real-Hernandez*, 90 F.3d 356, 361–62 (9th Cir. 1996) (noting that when a defendant meets all five requirements the safety valve, "[t]his, of course, does not require the court to sentence a defendant to a term less than the mandatory minimum; but it does require the court to sentence the defendant 'without regard to any statutory minimum'" (quoting 18 U.S.C. § 3553(f))). The district court would presumably be unlikely to exercise its discretion to sentence a person with multiple three-point offenses below the mandatory minimum.

[16] Even if the surplusage of § 3553(f)(1)(A) and the odd (though not absurd) results from applying the plain text of § 3553(f)(1)(C) rendered "and" ambiguous, I would nonetheless still hold that "and" must be given a conjunctive interpretation by applying the rule of lenity. *See* Majority Opinion at 25–26.

U.S. 302, 320 (2014).  Congress certainly could have used more exacting language when modifying the safety valve in § 3553(f)(1).  In this case, however, "[t]o decide" the meaning of "and" in § 3553(f)(1), "we start with the text of the statute, and as it turns out, it is not necessary to go any further."  *Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020) (internal citation omitted).  "And" means "and."  *See* Majority Opinion at 10–11.  "[O]ur 'sole function' is to apply the law as we find it."  *Niz-Chavez v. Garland*, 141 S. Ct. 1474, __, 2021 WL 1676619, at *4 (2021) (quoting *Lamie*, 540 U.S. at 534).  I join the majority in holding that a defendant's criminal history must satisfy all three subsections of § 3553(f)(1) for that individual to be ineligible for safety valve relief.  However, I respectfully disagree with the majority's interpretation of § 3553(f)(1)(C).  Reading "a prior 2-point violent offense" as "a prior violent offense of at least 2 points" is not faithful to the plain text of that provision.