RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

AARON M. HAYNES,

*Defendant-Appellant*.

No. 22-5132

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:19-cr-00207-4—Thomas A. Varlan, District Judge.

Argued:  October 20, 2022

Decided and Filed:  December 19, 2022

Before:  BATCHELDER, GRIFFIN, and KETHLEDGE, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Rachel L. Wolf, Knoxville, Tennessee, for Appellant.  Francesco Valentini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:**  Rachel L. Wolf, Knoxville, Tennessee, for Appellant.  Francesco Valentini, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Brent Nelson Jones, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

KETHLEDGE, J., delivered the opinion of the court in which BATCHELDER, J., joined. GRIFFIN, J. (pp. 8–16), delivered a separate dissenting opinion.

——————————

**OPINION**

——————————

KETHLEDGE, Circuit Judge.  Aaron Haynes argues that the district court misinterpreted 18 U.S.C. § 3553(f)(1) when it denied him "safety valve" relief from his mandatory-minimum sentence.  We agree with the district court's interpretation of the statute and affirm.

I.

In 2018, Aaron Haynes began dealing drugs as part of a larger drug-trafficking conspiracy near Knoxville, Tennessee.  About a year later a federal grand jury indicted him on drug charges.  In April 2020, Haynes pled guilty to conspiring to possess with intent to distribute 40 grams or more of fentanyl and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B).

The quantity of drugs to which Haynes pled made him subject to a mandatory-minimum sentence of five years.  *See* 21 U.S.C. § 841(b)(1)(B).  At sentencing, however, Haynes argued that he was eligible for so-called "safety-valve" relief under 18 U.S.C. § 3553(f).  That provision allows a district court to impose a sentence below an otherwise-applicable mandatory minimum if the defendant meets certain requirements.  *See* 18 U.S.C. § 3553(f)(1)-(5).  The district court held that Haynes had not met those requirements—specifically, the one enumerated in § 3553(f)(1)(B)—because he had a prior conviction for which he was assigned three points under the Sentencing Guidelines.

At sentencing, the government separately moved to afford Haynes a different kind of relief from the mandatory-minimum sentence, based on his "substantial assistance" in prosecuting other members of the conspiracy.  18 U.S.C. § 3553(e).  The court granted that motion and sentenced Haynes to 32 months' imprisonment.  In doing so, however, the court expressly considered Haynes's ineligibility for safety-valve relief under § 3553(f) as a factor favoring a longer sentence. This appeal followed.

II.

We review the court's interpretation of 18 U.S.C. § 3553(f)(1) de novo. *See United States v. Miller*, 734 F.3d 530, 539 (6th Cir. 2013).

Section 3553(f)(1) provides in relevant part:

(f) the court shall impose a sentence . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . that—

> (1) the defendant does not have—
>
>> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>>
>> (C) a prior 2-point violent offense, as determined under the sentencing guidelines[.][1]

---

[1]Section 3553(f) reads in its entirety as follows:

(f) Limitation on Applicability of Statutory Minimums in Certain Cases.—Notwithstanding any other provision of law, . . . the court shall impose a sentence pursuant to guidelines . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . . that—

> (1) the defendant does not have—
>
>> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>>
>> (C) a prior 2-point violent offense, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

The question presented is whether—as the government argues and the district court held—this provision requires the defendant to show that he has *none* of the criminal history described in subsections (A)-(C); or whether instead—as Haynes argues—the defendant must show only that he lacks the criminal history described in *any one* of those subsections. The answer to that question, everyone agrees, depends on the meaning of the word "and" as used in § 3553(f)(1)(B).

It turns out that "and" has more meanings than one might suppose. By way of background, grammatical rules are an archetype of rules of conduct with which we often comply without conscious awareness of doing so. Small children comply with any number of grammatical rules without awareness even of their existence; and adults comply with rules concerning the pluperfect and subjunctive tenses, for example, without consciously knowing what those rules are. We likewise *understand* language according to these same grammatical rules, again often without awareness of their existence. Thus, a particular grammatical rule might strike us as impossibly esoteric, and yet shape our understanding of language every day. The task of determining the ordinary meaning of a word or phrase, therefore, is sometimes one of excavating—and taking conscious account of—rules as to which our compliance is often unconscious.

For all but seasoned grammarians, such is the case here. Everyone agrees that, as used in § 3553(f)(1), the word "and" is conjunctive rather than disjunctive. The relevant grammatical rule is that, "[w]hen used as a conjunctive, the word 'and' has 'a distributive (or several) sense as well as a joint sense.'" *United States v. Pulsifer*, 39 F.4th 1018, 1021 (8th Cir. 2022) (quoting *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011)). The specific question here is which sense of "and"—distributive or joint—is used in § 3553(f)(1)(B).

Judge Rogers has provided an excellent illustration of the distributive and joint senses of "and." Suppose a host asks two guests what they like to drink. One guest answers "bourbon and water"; the other, "beer and wine." For both answers the distributive and joint senses of the word "and" are grammatically sound. But the guest who likes "bourbon and water" will probably be disappointed if the host hands her a glass of water alone. That is because her answer very likely uses "and" in the joint sense, meaning she likes bourbon and water *together*. Yet the

latter guest will likely be revolted if the host hands him a glass of Budweiser and Bordeaux combined; for his answer very likely uses "and" in the distributive (or several) sense, meaning "I like beer and I like wine." *See OfficeMax, Inc. v. United States*, 428 F.3d 583, 600 (6th Cir. 2005) (Rogers, J., dissenting); *see also, e.g.*, R. Huddleston & G. Pullum, The Cambridge Grammar of the English Language, ch. 15, § 1.3, pp. 1280-82 (2002). No rule of construction tells the host which meaning each guest intends; yet virtually no one would say that either answer is ambiguous. That is simply because of the *content* of each answer: for the bourbon-and-water answer, as a matter of common sense or experience, the joint sense of "and" is more plausible than the distributive; and for the beer-and-wine answer, the opposite is true.

Here, the situation is similar. As a grammatical matter, § 3553(f)(1) could require, as Haynes argues, that the "defendant does not have" "more than 4 criminal history points" and "a prior 3-point offense" and "a prior 2-point violent offense" *together* in his criminal record—which would be the joint sense of the word "and." Thus, on that reading, a defendant is eligible for safety-valve relief if his record lacks *any* of those things. Or, as the government argues, § 3553(f)(1) could use the word "and" in the distributive sense, so that "and" serves as a shorthand for repeating (or "distributing") the prefatory clause before each of the subsections that follows. Thus, on that reading, a defendant is eligible for safety-valve relief only if the defendant does not have "more than 4 criminal history points" *and* the defendant does not have "a prior 3-point offense" *and* the defendant does not have "a prior 2-point violent offense[.]"

Both meanings are grammatically sound. Moreover—with one important exception, discussed below—no rule of construction strongly favors one meaning over the other. Consider, for example, the presumption that "identical words used in different parts of the same act are intended to have the same meaning." *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 319 (2014) (cleaned up). That rule is useless here because (as Judge Rogers's example illustrates) one can toggle between the joint and distributive senses of "and" in close proximity to each other. In this respect, the word "and" is simply different from the more specialized words to which that presumption is typically applied.

The reality is that—as with Judge Rogers's example—the respective content of each proposed meaning of § 3553(f)(1) shows that one sense of the word "and" is more plausible than

the other.  In making that judgment, of course, we must be careful not to conflate plausibility with our own sense of good policy.  The interpretive question, rather, is how the words of § 3553(f)(1) would be understood by an ordinary reader.  And—whatever the underlying policy reflected in each interpretation—an ordinary reader would favor a logically coherent interpretation over a seemingly arbitrary one.

Here, the government's interpretation of § 3553(f)(1) is logically coherent.  Again by way of background, when § 3553(f)(1) was first enacted in 1994, it provided that any defendant with "more than one criminal history point" was ineligible for safety-valve relief.  *See* 18 U.S.C. § 3553(f)(1) (1994).  Congress amended § 3553(f)(1) in the First Step Act of 2018 to read as it does now.  Under the government's interpretation—for a defendant to obtain relief from an otherwise mandatory-minimum sentence—the defendant must not have any of three disqualifying conditions in his criminal record:  first, "more than 4 criminal history points," itself a fourfold increase over the prior cap; second, a prior offense serious enough to add three points to his criminal record; and third, a prior 2-point "violent offense[.]"  Each of those conditions on its face is quite plausibly an independent ground to deny a defendant the extraordinary relief afforded by the safety valve—which means this reading is logically coherent.

The same is not true of Haynes's interpretation, which would require that all these conditions be present for a defendant to be ineligible for safety-valve relief.  Consider, for example, a defendant with 25 criminal history points, generated in part by six convictions for assault with a deadly weapon and six convictions for domestic assault.  (Both can be two-point violent offenses. *See, e.g.*, *United States v. Delgado-Hernandez*, 646 F.3d 562, 564 (8th Cir. 2011).)  Under Haynes's interpretation, this defendant would qualify for safety-valve relief because of the fortuity that his criminal record lacks "a prior 3-point offense[.]"  18 U.S.C. § 3553(f)(1)(B).  Or consider an incorrigible recidivist with, say, 24 criminal-history points, comprising a half-dozen convictions for robbery and two convictions for possession of explosives with intent to terrorize.  (Both are often three-point offenses. *See, e.g.*, *United States v. Henderson*, 209 F.3d 614, 616 (6th Cir. 2000); *United States v. Priest*, 447 F. App'x 682, 684 (6th Cir. 2011).)  This defendant too would be eligible for safety-valve relief, for want of a prior *two*-point violent offense.  Results like these appear arbitrary enough to be implausible—which

makes Haynes's interpretation akin to an interpretation of beer-and-wine in the joint sense rather than the distributive one. Haynes does offer a thoughtful response: namely that the district court serves as a gatekeeper in cases where § 3553(f)(1) generates results as bizarre as these. But an ordinary reader would expect that § 3553(f)(1) itself would serve as a gatekeeper—and not an arbitrary one. That indeed is the whole point of the provision. The government's reading of § 3553(f)(1) is therefore better than Haynes's reading.

That conclusion is confirmed by a rule of statutory construction, namely the "cardinal principle" that courts "must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000). We agree with the Eighth Circuit that, of the interpretations on offer here, "[o]nly the distributive interpretation avoids surplusage." *Pulsifer*, 39 F.4th at 1022. A defendant with "a prior 2-point violent offense" and "a prior 3-point offense" by definition would have "more than 4 criminal history points"—meaning that, under Haynes's interpretation, § 3553(f)(1)(A) would lack any practical effect. Haynes responds that a defendant might have a prior 2-point violent offense or 3-point offense that is too old to count toward his criminal-history points. *See* U.S.S.G. § 4A1.2(e) (providing that certain prior sentences imposed more than ten or fifteen years before the current offense do not count toward the defendant's criminal history). But § 3553(f)(1) refers only to "prior 3-point" and "prior 2-point violent" offenses "as determined under the sentencing guidelines"—which means *all* the Guidelines, including § 4A1.2(e). And a prior offense that counts for zero points under that guideline is not a "3-point" or "2-point" offense "as determined under the sentencing guidelines[.]" 18 U.S.C. § 3553(f)(1)(B), (C). The district court was correct to find Haynes ineligible for safety-valve relief.

\*     \*     \*

The district court's judgment is affirmed.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.

Today's case presents a basic issue of statutory interpretation: does "and" mean "and"? This issue arises in the context of 18 U.S.C. § 3553(f)'s "safety valve" provision, which provides that a defendant is ineligible for relief from a mandatory-minimum sentence if he has "more than 4 criminal history points," "a prior 3-point offense, . . . *and*," "a prior 2-point violent offense." § 3553(f)(1)(A)–(C) (emphasis added). The majority's conclusion, though couched in other terms, is that "and" means "or" in this context. Because I conclude that "and" should indeed mean "and," I respectfully dissent.

## I.

As amended by the First Step Act of 2018, § 3553(f) provides that a district court "shall impose a sentence . . . without regard to any statutory minimum sentence, if the court finds" that the defendant meets five requirements:

(1) the defendant does not have --

(A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;

(B) a prior 3-point offense, as determined under the sentencing guidelines; *and*

(C) a prior 2-point violent offense, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f) (emphasis added).

The requirements in subsection (f)(1) are the basis of the dispute before us. It is undisputed that defendant Aaron Haynes has a 3-point felony conviction on his record, but neither a 2-point offense nor more than 4 criminal history points. Thus, whether the list in subsection (f)(1) is conjunctive or disjunctive, distributive or joint, is dispositive—Haynes prevails if the list is conjunctive, but he loses if it is disjunctive (or distributive).

Fortunately, we are not the first court to consider this issue, nor (hopefully) will we be the last—whether one is eligible for safety-value relief is now largely a function of geography. I agree with the Eleventh Circuit's en banc opinion in *United States v. Garcon*, — F.4th —, 2022 WL 17479829 (11th Cir. 2022) (en banc), with the conclusion reached by the Ninth Circuit in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), and with other dissenting colleagues in the Fifth and Seventh Circuits, namely Judge Willett in *United States v. Palomares*, 52 F.4th 640, 652–59 (5th Cir. 2022), and Judge Wood in *United States v. Pace*, 48 F.4th 741, 759–68 (7th Cir. 2022). Their interpretation—that § 3553(f)(1)'s "and" is truly conjunctive—harmonizes most canons of statutory interpretation and gives effect to the language Congress used.

In discerning the ordinary meaning of "and," we have recognized that it generally requires a conjunctive reading. "[D]ictionary definitions, legal usage guides and case law compel us to start from the premise that 'and' usually does not mean 'or'"; rather it "presumptively should be read in its 'ordinary' conjunctive sense unless the 'context' in which the term is used or 'other provisions of the statute' dictate a contrary interpretation." *OfficeMax, Inc. v. United States*, 428 F.3d 583, 588–89 (6th Cir. 2005) (citations omitted). This indicates that the "and" here presumptively joins the three requirements together. But how? *Reading Law* provides the answer: "Under the conjunctive/disjunctive canon, *and* combines items while *or*

creates alternatives." A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, 116 (Thompson/West 2012). Here, the statute is not a normal list (i.e., you must have A, B, and/or C) or even a basic prohibition (i.e., you must not do A, B, and/or C), but rather a negative proof (i.e., you must *have not* A, B, and/or C). *See id*. at 116–21. When a negative proof employs the word "and," it is conjunctive; thus, "you must prove that you did not do *all three*." *Id*. at 120 (emphasis added). This is contrasted with the disjunctive negative proof where the defendant "must have done none" of the prohibitions. *Id*. Therefore, the ordinary meaning of "and" is that it requires the defendant to have done "all three" of the requirements in § 3553(f)(1) to be excluded from consideration.

"Context confirms this reading." *Garcon*, — F.4th at —, 2022 WL 17479829, at *3. Applying the ordinary reading of "and" in this context draws support from the canon of consistent usage. "Similar language contained within the same section of a statute must be accorded a consistent meaning." *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 501 (1998). Subsection (f) has two lists of criteria joined together by "and." One is the list in subsection (f)(1) that is the focus of our dispute; the other is in the broader list in subsection (f) itself. The canon of consistent usage explains that the two "ands," in the same section, nonetheless, should be accorded a consistent meaning. *See id*.; *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980) (rejecting a particular interpretation of statute because "we cannot accept respondent's position without unreasonably giving the word 'filed' two different meanings *in the same section* of the statute" (emphasis added)). Here, no one disputes that the broader list in subsection (f) is a conjunctive one—a defendant must satisfy each one of these criteria to be eligible for safety valve relief. Thus, it makes logical sense that the "and" in subsection (f)(1) be interpreted in the same conjunctive manner as "and" in subsection (f)— doing otherwise creates discord within the same section.

The thrust of the government's response to these arguments is that requiring "and" to truly mean "and" would result in § 3553(f)(1)(A) being surplusage. "[O]ne of the most basic interpretive canons," the presumption against surplusage means that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (citations

omitted). This argument is intuitive: three plus two is five, which is always more than four. And the Supreme Court has recognized that we are "often compelled to construe '*or*' as meaning '*and*,' and again '*and*' as meaning '*or*.'" *United States v. Fisk*, 70 U.S. 445, 447 (1865). It has also formed the basis for most decisions on this issue in the government's favor. *See, e.g.*, *Palomares*, 52 F.4th at 644–47; *Pace*, 48 F.4th at 754; *United States v. Pulsifer*, 39 F.4th 1018, 1021–22 (8th Cir. 2022).

Determining whether subpart (A) has meaning, and what that meaning is, requires first determining exactly what subparts (B) and (C) require. Subpart (B) requires a defendant not to have "a prior 3-point offense, as determined under the sentencing guidelines" and subpart (C) similarly requires him or her not to have "a prior 2-point violent offense, as determined under the sentencing guidelines." These two sections, per their own terms, focus on a prior "*offense*." This is different from subsection (A), which focuses on "criminal history *points*." Because these terms are materially different, "the presumption is that the different term denotes a different idea." *Southwest Airlines Co. v. Saxon*, 142 S.Ct. 1783, 1789 (2022) (quoting *Reading Law*, 170).

Next, both (B) and (C) incorporate the Guidelines, which provide the following calculations:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> (e) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1.  However, not all offenses that a defendant has ever committed will be used to assess criminal history points.  Section 4A1.2 lays out certain exclusions or limitations on assessing points.  For example, subsection (c) explains that "all felony offenses are counted," but others for misdemeanor and petty crimes are not.  U.S.S.G. § 4A1.2(c).  There are time limitations too.  Felonies (i.e., crimes with a sentence of a year and a month) are counted if the defendant committed the offense, or served any part of a resulting sentence, within 15 years of the instant offense.  U.S.S.G. § 4A1.2(e)(1).  Other sentences have a 10-year limit, and "[a]ny prior sentence not within the time periods specified above is not counted."  U.S.S.G. § 4A1.2(e)(2)–(3).  The same section also exempts sentences imposed by certain courts—for example, sentences resulting from a juvenile "diversionary disposition," a "summary court martial," a "foreign conviction[]," a "tribal court conviction[]," and an "expunged conviction[]" are not counted.  U.S.S.G. § 4A1.2(f)–(j).

Considering the Guidelines reveals that interpretations of subparts (B) and (C) exist that would give effect to all § 3553(f)'s provisions, such that "no part will be inoperative or superfluous, void or insignificant."  *Corley*, 556 U.S. at 314.  Subparts (B) and (C) focus on criminal *offenses*, while subpart (A) focuses on criminal history *points*.  All three direct the reader to determine this "under the sentencing guidelines."  Under § 4A1.1, points are assessed for offenses which carry certain sentence lengths, but under § 4A1.2, some of these points do not count towards a defendant's criminal history points.  Thus, a defendant may have committed a 2- or 3-point *offense* without that offense being used to calculate criminal history *points*.  Judge Wood cogently outlined several examples of when this could occur:

> • A defendant who finished serving a sentence for a two-point violent offense 11 years ago, thus satisfying subpart (C), and who has a more recent three-point nonviolent offense (satisfying (B)), would not satisfy (A).  His "criminal history points . . . as determined under the sentencing guidelines" would be three, because the guidelines instruct that two-point or lower sentences older than 10 years should not be included in the criminal history points calculation.  See *Id.* §§ 4A1.2(e)(2), (3).

> • Similarly, a defendant who finished serving a sentence for a three-point offense 21 years ago (satisfying (B)) and a two-point violent offense last year (satisfying (C)), would not satisfy (A). His "criminal history points . . . as determined under the sentencing guidelines" would be two, because the

guidelines instruct that no sentence older than 15 years should be included in the calculation. See *Id.* §§ 4A1.2 (e)(1), (3).

> • To the same effect, a defendant who committed a three-point offense (satisfying (B)), and a two-point violent offense adjudicated by a tribal court (satisfying (C)), would not satisfy (A). His "criminal history points . . . as determined under the sentencing guidelines" would be three because the guidelines instruct that points resulting from tribal court convictions be excluded. See *Id.* § 4A1.2(i).

*Pace*, 48 F.4th at 763–64 (Wood, J., dissenting). And, as the Eleventh Circuit explained, a single *offense* could result in multiple sentences for separate crimes, but the Guidelines treat those offenses as a single sentence for scoring *points*. *See Garcon*, — F.4th at —, 2022 WL 17479829, at *6. As these examples demonstrate, circumstances exist where a defendant's record contains a particular *offense* that would normally carry with it a point assessment, but that offense is not counted as part of the defendant's criminal *points*. So a defendant may have on his or her record a 2-point *offense* and a 3-point *offense* but still have less than 4 criminal history *points*. In this interpretation, subpart (A) is not surplusage.

This interpretation harmonizes all three canons and, thus, should carry the day. First, it gives effect to the plain meaning of the words chosen by Congress. "And" means "and" in its normal conjunctive sense, and both "points" in subpart (A) and "offense" in subparts (B) and (C) are given their separate meanings. Second, it allows "and" to have a consistent usage throughout subsection (f)—the lists in subsection (f)(1)(A) and (f)(1) are both conjunctive. And third, it avoids surplusage because subparts (A), (B), and (C) still have independent functions. Subpart (A) ensures that a defendant does not have too many criminal history points, while subparts (B) and (C) ensure that a defendant has not committed both felony and non-felony offenses. Together, this excludes defendants from safety-valve consideration if they have committed too many types of offenses. And, as Judge Willett reasoned, a counter-interpretation runs afoul of these canons in other ways, such as by failing to read "and" out of § 3553(f)(1) entirely or failing to give consistent effect to other times Congress used "and" and "or" in § 3553. *See Palomares*, 52 F.4th at 656–58 (Willett, J., dissenting). Consequently, this interpretation is preferrable as it provides the most logically coherent interpretation of the statute and the canons we use to interpret it.

II.

The majority disagrees. It concludes that the list is conjunctive, yet also distributive. To reach this conclusion, the majority relies on context to conclude that the only "logically coherent" interpretation of the statute is the one advanced by the government—the defendant must not have each individual prohibition. But the majority's interpretation relies on a host of interpretive problems to reach its conclusion.

For one, the majority ignores the plain language of the statute, concluding instead that "and" is conjunctive but also distributive by relying on the "content" of the lists at issue. But the ordinary meaning of the word "and" is that it usually *joins* elements together. *See And*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/and (last accessed December 1, 2022) (defining "and" as "used to join sentence elements of the same grammatical rank or function"). The majority explains this normal meaning away, stating that "and" can have "a distributive (or several) sense as well as a joint sense" based purely on the "content" of the list at issue. *See Pulsifer*, 39 F.4th at 1021 (quoting *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011)). True, "and" may sometimes have a distributive sense, but that is not its normal, usual meaning, largely because a conjunctive-yet-distributive sense of "and" transforms it into "or." *See Garcon*, — F.4th at —, 2022 WL 17479829, at *4 ("Essentially, the government['s argument] invites us to read 'and' to mean 'or.'"). And "[w]e give our language, and our language-dependent legal system, a body blow when we hold that it is reasonable to read '*or*' for '*and*.'" *Garner's Dictionary of Legal Usage* 56 (citation omitted). While § 3553(f) is not a masterpiece of draftsmanship, Congress used the words that it did, and we must apply those terms as written.

According to the majority opinion, the purported "content" indicating a distributive sense of "and" is that Haynes's interpretation is not "logically coherent" because it would allow "incorrigible recidivist[s]" to be eligible for safety valve relief. But there is nothing incoherent, arbitrary, or absurd in excluding only those defendants who have both a 2- and 3-point offense from safety-valve relief. As described in *Lopez*, the statute exempts defendants from consideration if they have too many types of recent offenses. *See* 998 F.3d at 439. "Congress could have made a policy decision that the safety valve should focus more on the defendant's

instant offense rather than the defendant's prior criminal history." *Id.* The majority's description to the contrary ignores § 3553(f) as a whole, for other provisions of the statute exclude violent offenders from safety-valve consideration. *See* § 3553(f)(2)–(3). Further, the entire subsection, not just § 3553(f)(1), is the "gatekeeper" for safety-valve relief, meaning that this interpretation is far from "arbitrary." The statute says what it says, and its "content" supports Haynes's interpretation. Because of this, the majority's acceptance of the government's interpretation is no more than doing what it says it is not: "conflat[ing] plausibility with our own sense of good policy." *Cf. Lopez*, 998 F.3d at 440 ("The government's request . . . is simply a request for a swap of policy preferences.").

Finally, even if § 3553(f)(1)(A) *were* surplusage, that should not change our conclusion. Despite the majority's notation to the contrary, rules of construction *do* strongly favor one reading over another. As described above, "and" should mean "and" given the canons of ordinary meaning and consistent usage—they support reading "and" as conjunctive given that subsection (f) is a conjunctive list. Plus, surplusage is far from being forbidden: "[r]edundancies across statutes are not unusual events in drafting," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (citations omitted), and, as such, "a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage," *Reading Law*, 174. *See also Lopez*, 998 F.3d at 445–46 (Smith, J., concurring) (concluding that § 3553(f)(1)(A) is surplusage yet that subsection (f)(1) is still conjunctive). Therefore, ample logic exists that supports Haynes's interpretation of the statue, even if subsection (f)(1)(A) were surplusage. Thus, the purported "logical consistency" in the government's argument is no more than a fallacy as "[t]he anti-surplusage canon gives us no license to skirt unambiguous text." *Garcon*, — F.4th at —, 2022 WL 17479829, at \*12 (Newsom, J., concurring).

### III.

In summary, "[t]here is nothing irrational, absurd, superfluous, or otherwise faulty about applying section 3553(f)(1) straightforwardly, allowing the word 'and' to mean 'and,' and observing the distinctions drawn in the Sentencing Guidelines between offenses and the number of criminal history points that are countable." *Pace*, 48 F.4th at 768 (Wood, J., dissenting). "If [Congress] wished to withhold safety valve relief from defendants who failed any one of the

three sub-sections, it would have (maybe *should* have) joined them together with 'or.'" *Palomares*, 52 F.4th at 652–53 (Willett, J., dissenting). In other words, "'[a]nd' means 'and.'" *Garcon*, — F.4th at —, 2022 WL 17479829, at *2. Thus, I respectfully dissent.